102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt
1

1          IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF GEORGIA
2                    COLUMBUS DIVISION

3
   DAVID BRASH,                    )
4                                  )
                  Plaintiff,       )    CIVIL ACTION FILE
5                                  )
             vs.                   )    NO.  4:09-CV-146
6                                  )
   PHH MORTGAGE CORPORATION,       )
7  D/B/A COLDWELL                  )
   BANKER MORTGAGE,                )
8                                  )
                  Defendant.       )
9  _____)

10

11          30(b)(6) videotaped deposition of PHH

12     MORTGAGE CORPORATION (KIM JOHNSTON), taken on

13     behalf of the Plaintiff, pursuant to the

14     stipulations contained herein, reading and

15     signing of the deposition being reserved, in

16     accordance with the Federal Rules of Civil

17     Procedure, before G. Paige Alexander, certified

18     Court Reporter, at Six Concourse Parkway, Suite

19     3200, Atlanta, Georgia, on the 22nd day of

20     October, 2010, commencing at the hour of

21     10:18 a.m.

22                    *   *   *

23               D'AMICO GERSHWIN, INC.
                 Certified Court Reporters
24                  11475 West Road
                 Roswell, Georgia  30075
25                  (770) 645-6111

2

1               INDEX TO EXAMINATION

                     Page 1

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

2    Examination by Mr. Gower                                5

3    Examination by Ms. Rose                               136

4    Re-examination by Mr. Gower                           147

5

6                         INDEX TO EXHIBITS

7    Plaintiff's        Description              Marked/First
     Exhibit                                     Identified

8

9    P-1        Late payment notice, dtd. 5/1/09           22

10   P-2        Letter to David Brash from                 23
                Coldwell Banker Mortgage, dtd. 5/22/09
11
     P-3        Late payment notice, dtd. 6/1/09            5
12
     P-4        Letter to Coldwell Banker Mortgage         88
13              entities from Charles A. Gower, dtd. 6/22/09

14   P-5        Letter to David Brash from                  5
                Coldwell Banker Mortgage, dtd. 10/22/09
15
     P-6        Letter to Coldwell Banker Mortgage        118
16              entities from Charles A. Gower, dtd. 10/23/09

17   P-7        Letter to David Brash from                  5
                Coldwell Banker Mortgage, dtd. 10/27/09
18
     P-8        Letter to David Brash from                 60
19              Coldwell Banker Mortgage, dtd. 11/13/09

20   P-9        Letter to Miranda and David Brash           5
                from Columbus Bank and Trust
21              Company, dtd. 11/23/09

22   P-10       Letter to David Brash from                142
                Coldwell Banker Mortgage, dtd. 11/24/09
23
     P-11       Letter to Mortgage Service Center           5
24              from David Brash, dtd. 11/30/09

25

                                                                    3

1    INDEX (continued):

2    P-12       Letter to Coldwell Banker Mortgage          5
                from David Brash, dtd. 12/01/09
3
     P-13       Letter to David Brash from                  5
4               Coldwell Banker Mortgage, dtd. 12/21/09

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

| | | | |
|---|---|---|---|
| 5 | P-14 | Letter to David Brash from Coldwell Banker Mortgage, dtd. 12/22/09 | 5 |
| 6 | | | |
| 7 | P-15 | Letter to Coldwell Banker Mortgage from David Brash, dtd. 01/14/09 | 5 |
| 8 | P-16 | Letter to David Brash from Coldwell Banker Mortgage, dtd. 01/28/10 | 52 |
| 9 | | | |
| 10 | P-17 | Customer Account Activity Statement dated 4/20/10 | 152 |
| 11 | P-19 | Consolidated note log on David Brash dtd. 9/30/10 | 154 |
| 12 | | | |
| 13 | P-20-A | Consolidated note log on David Brash from 5/2009 through 11/2009 | 10 |
| 14 | P-20-B | Consolidated note log on David Brash 11/12/2009 to 2/5/2010 | 11 |
| 15 | | | |
| 16 | P-21 | Consolidated note log on David Brash from 12/2007 through 11/2009 | 10 |
| 17 | P-22 | David Brash and PHH telephone transcripts, disk 1 | 72 |
| 18 | | | |
| 19 | P-23 | David Brash and PHH telephone transcripts, disk 3 | 26 |
| 20 | P-24 | David Brash and PHH telephone transcripts, disk 2 | 135 |
| 21 | | | |
| 22 | P-25 | David Brash and PHH telephone transcript, dtd. 11/17/09 | 135 |
| 23 | P-26 | Letter to Charles A. Gower from Emilie O. Denmark, dtd. 01/22/10 | 120 |
| 24 | | | |
| 25 | | | |

♀

4

1    APPEARANCES OF COUNSEL:

2

3    On behalf of the Plaintiff:

4            CHARLES A. GOWER
             Attorney at Law
5            Charles a. Gower, PC
             P.O. Box 5509
6            1425 Wynnton Road
             Columbus, Georgia 31906-0509
7            Phone:  (706) 324-5685
             Fax:  (706) 322-2964
                    Page 3

```
102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt
 8              charlie@cagower.com

 9

10   On behalf of the Defendant:

11              LISA K. ROSE
                EMILIE O. DENMARK
12              Attorneys at Law
                McCalla Raymer, LLC
13              Six Concourse Parkway
                Suite 3200
14              Atlanta, Georgia 30328
                Phone:  (678) 281-6443
15              Fax:  (770) 643-4306
                lkr@mccallaraymer.com
16              emilie.denmark@mccallaraymer.com

17

18   Videographer:

19              William Roach
                Video One
20              2185 Rosebud Road
                Grayson, Georgia  30017
21              Phone:  (678) 985-8677

22

23

24

25
```

                                                                5

```
 1              (Thereupon, all exhibits marked for

 2        identification prior to the deposition.)

 3              (VIDEO CAMERA ON.)

 4        MS. DENMARK:  We're on the video record.

 5        This is the beginning of the deposition

 6   of Miss Kim Johnston.  Today's date is

 7   October 22nd, 2010, and the time is

 8   approximately 10:20 a.m.

 9        The court reporter may swear in the

10   witness.
```

                         Page 4

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

11              KIM JOHNSTON,

12   having been first duly sworn, was examined and

13   testified as follows:

14                   EXAMINATION

15   BY MR. GOWER:

16       Q      Miss Johnston, I'm Charlie Gower, and I

17   represent David Brash in this lawsuit against Coldwell

18   Banker Mortgage because of the way he was treated by

19   Coldwell Banker.

20              Would you tell us your name and what you

21   do for Coldwell Banker?

22       A      Sure.  My name is Kim Johnston.  I'm the

23   manager of the cash management department.  And the

24   cash management department oversees all the payment

25   applications, as well as some reconciliations of the

6

1    daily applications.  We process debits and credit

2    return items, suspense applications and we're

3    responsible --

4        Q      I'm sorry?

5        A      Suspense applications, and we're

6    responsible for the setup and maintenance of the ACH

7    direct debit process for any customers who wish to

8    choose to do that.

9        Q      And where are you located?

10       A      I'm located in Mount Laurel, the 2001

11   Bishops Gate Boulevard.

12       Q      Where is that?

13       A      That's in New Jersey.

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

14      Q       All right.  And how many folks do you

15   have working for you?

16      A       I have about 40 people that are under me,

17   currently.

18      Q       Okay.  So in other words, y'all are

19   supposed to take care of seeing to it that the

20   payments that are received are properly credited?

21      A       Yes; a portion of that team, about 20

22   people, are responsible for the payment application,

23   depending on the origin of the payment.

24      Q       Okay.  And when somebody calls in with a

25   problem with their payment, do they speak to somebody

⚇

7

1    in India?

2       A       It -- I'm not responsible for that area.

3    The call center can be routed to India.  We do have

4    some outsources in India.

5       Q       So if somebody -- when David Brash calls

6    the 800 number that Coldwell Banker gives him to call

7    when he has a problem with his account, he doesn't

8    talk to anybody in your department?

9       A       Not in my department.

10      Q       He talks to somebody in India?

11      A       Somebody in the customer service

12   department.

13      Q       Which in -- in this case has been in

14   India?

15      A       I'm not -- I don't know if that's the

16   fact or not.

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

17    Q    You don't know anything about that?

18    A    I don't know if who he talked with was

19  from India.

20    Q    Do you know any of those folks in India

21  that handle the problems with the loans?

22    A    No, I don't know those folks.

23    Q    Do you ever talk to them?

24    A    No.

25    Q    Well, let's -- on the telephone calls,

8

1  when people call in to Coldwell Banker with a problem

2  on their account, are the telephone calls all

3  recorded?

4    A    To my knowledge, the phone calls are

5  recorded, from what I've been told.

6    Q    Who told you that?

7    A    The director of the call center.

8    Q    All right.  And who was -- you know, we

9  had a hard time getting transcripts of phone calls in

10  this case, and finally it took a court order to get

11  them.

12         Were you in -- in charge of getting us

13  those transcripts?

14    A    No, I was not.

15    Q    Who was?

16    A    It would have been the call center.

17    Q    Do you know we still haven't gotten all

18  the transcripts?

19    A    I don't -- transcripts, meaning?

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

20      Q        Where we were sent some disks of calls,

21   and we tried to listen to them and type them up, but

22   we haven't received all the disks of all the calls.

23   Do you know why we haven't?

24              MS. ROSE:  I'm going to object to that

25         question to the extent it's not part of the --

9

1              the list of topics for today, and that's

2              something I think you and I can address.

3   BY MR. GOWER:

4      Q        Well, I want to address it with you.  Do

5   you know why we haven't gotten all the disks --

6      A        No.

7      Q        -- for all the calls?

8      A        No, I don't.

9      Q        Okay.  Do you have anything to do with

10   what's called the consolidated note log?

11      A        I'm familiar with the consolidated note

12   log.

13      Q        Well, what do you -- do you use it in

14   your business?

15      A        I use it in my business, yes.

16      Q        And what do you have to do with the

17   consolidated note log?

18      A        Well, every team player in the company

19   has the ability to enter notes into the system.

20      Q        Uh-huh.

21      A        And that is the archive of -- on record

22   on our system.

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

23     Q      All right.  So would it be fair to state

24   that everything in connection with a particular

25   account that takes place is supposed to be reported on

♀

10

1   the consolidated note log?

2     A      Define "everything."

3     Q      Well, all the reaction -- all the

4   transactions between Coldwell Banker and a customer.

5     A      Verbal transactions?

6     Q      Verbal and written.

7     A      Yes.

8         (Thereupon, marked for identification,

9      Plaintiff's Exhibit P-21.)

10  BY MR. GOWER:

11     Q      All right.  Let me show you -- well, let

12  me show you first Exhibit Number 21.

13         Exhibit 21 is -- is this the consolidated

14  note log on David Brash?

15     A      This appears to be the consolidated note

16  log on David Brash from December 2007 through

17  November 2009.

18     Q      Okay.

19     A      November 12th, 2009.

20         (Thereupon, marked for identification,

21      Plaintiff's Exhibit P-20-A.)

22  BY MR. GOWER:

23     Q      Okay.  Now let me show you Document

24  Number 20-A, and tell me what that is, please, ma'am.

25     A      Sure.  This is also a consolidated note

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

⚲                                                                              11

1    log from May 2009 through November 2009.

2                (Thereupon, marked for identification,

3         Plaintiff's Exhibit P-20-B.)

4    BY MR. GOWER:

5        Q    All right.  And let me show you

6    Exhibit 20-B, and tell me what it is, please, ma'am.

7        A    And this appears to be a consolidated

8    note log for Brash's loan from November 12th, 2009, to

9    June 17th, 2010 -- or February 5th, 2010.  The others

10   were extracted.

11       Q    All right.  On the -- the note log marked

12   20-A and 20-B --

13       A    Yes.

14       Q    -- why does it not have all the

15   information on it as relating to David Brash?

16       A    It appears to me that it was a

17   copy-and-paste of the consolidated note log.  When the

18   copy-and-paste took place, they just took the body of

19   the note log and not the complete headings of the note

20   log.

21       Q    Why was this a cut-and-paste deal?

22       A    For legibility.

23       Q    Well, why leave out important

24   information?

25       A    I believe it's the same information, the

⚲                                                                              12

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

1    notes, as what you appear on here.

2        Q        Ma'am?  I'm sorry:

3        A        I believe this information is the same

4    information that is on the consolidated note log on

5    the system.

6        Q        So -- so it's your testimony that 20-A

7    and 20-B is a complete consolidated note log, having

8    everything on it that's on the other consolidated note

9    log we were given?

10       A        I would have to look at it to compare it.

11       Q        Well, why was -- what I'm getting

12   confused about, why was there a cut-and-paste?  Why

13   not just give me the original data?

14       A        I don't know the answer why --

15       Q        Well --

16       A        -- they chose to do that.

17       Q        -- who did the cut and pasting?

18       A        I'm not sure who did the cut and pasting.

19       Q        Well, let's, if we can, start with the

20   very first entry on 20-A, the cut-and-paste one,

21   which --

22       A        20-A.

23       Q        Uh-huh -- is May 6, '09.  And my first

24   question to you here is, why didn't it go back to the

25   beginning of the loan, back into '07?

13

1        A        Our system of record only retains the

2    information for two years.  So the 2007, if when these

3    notes were pulled it was past the two-year cutoff, it

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

4    would only retain it two years from that date that

5    those notes were retained from our system --

6         Q       Do y'all throw the records away after two

7    years?

8         A       We do not throw the records away.

9         Q       What happens to them?

10        A       They are -- they are archived either on

11   fiche or on a CD --

12        Q       But --

13        A       -- or retrieval.

14        Q       Okay.  But in this case, why give me only

15   a cut-and-paste consolidated note log starting with

16   May of '09 --

17                MS. ROSE:  I'm --

18   BY MR. GOWER:

19        Q       When the account goes back to '07?

20                MS. ROSE:  I'm going to object to the

21           question to the form and to the inference that

22           she gave you this document.

23   BY MR. GOWER:

24        Q       Can you answer my question?

25        A       Can you repeat it?

                                                    14

1         Q       Sure.  What I'm -- What I'm confused

2    about is I've been given a cut-and-paste document by

3    Coldwell Banker Mortgage on David Brash, his

4    consolidated note log, and it starts on May 6, '09,

5    but his loan began in '07.

6         A       All right.

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

7      Q      So why don't I have the cut-and-paste

8    version from '07 to May of '09?

9      A      Well, you wouldn't be able to cut and

10    paste the version from '07 and '09.

11      Q      I'm sorry?

12      A      You would not be able to cut and paste

13    the version from '07 and '09.

14      Q      Why?

15      A      Because it's on fiche, and it's not on

16    the system of record.

17      Q      On fiche?

18      A      It's on fiche, F- -- microfiche.

19      Q      All right.  Well, do you know why I was

20    given a cut-and-paste document to begin with?

21      A      I don't know why you were given the

22    cut-and-paste.  If you -- believe that other

23    documentation has the same information.

24      Q      Okay.  If you will, let's look at Exhibit

25    21, which is another consolidated note log I was given

15

1    by Coldwell Banker.

2      A      Yeah.

3      Q      And let's start with the first entry.

4    And what I want to do is compare these two note logs,

5    the cut-and-paste one with the other one.

6      A      Well --

7      Q      And --

8             THE WITNESS:  Go ahead.

9             MS. ROSE:  Well, I was going to object.

Page 13

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

10          I don't know from what you have in front of you

11          if you're looking -- if you're looking at the

12          archived copy or the current copy pulled off

13          the system.  And I think it would help your

14          examination if that determ- -- that

15          distinguishment is made between the document

16          you're looking at.

17   BY MR. GOWER:

18       Q       What I want to do is compare the

19   consolidated note log I was given, Exhibit 21 --

20       A       Uh-huh.

21       Q       -- with the cut-and-paste version I was

22   given.

23       A       Okay.

24       Q       And --

25               MS. ROSE:  But you -- but just because of

                                                        16

1          in discovery, you were given several -- you

2          were given two sets of the consolidated notes

3          log, I want to make sure that everybody's clear

4          which one you're looking at.

5               MR. GOWER:  I've got them marked as

6          exhibit numbers, Exhibit Number 21 and Exhibit

7          Number 20-A.

8       A       Do you know the dates that these were

9   supplied to you?

10   BY MR. GOWER:

11       Q       They were supplied to me -- they just

12   came dribbling in over a period of time.  Every now

                         Page 14

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

13    and then we'd -- we'd say we hadn't got it; they'd

14    say, we're going to work on it; we'll give it to you.

15    Finally, we had a court order; we got more documents.

16    A       Okay.

17    Q       So I want to go back now and compare --

18            MS. ROSE:  And I think just for clarity's

19    sake, if we could have the -- the other set of

20    consolidated note logs that were produced to

21    you to do this analysis that you want to do

22    on -- for her deposition; which I'm fine with

23    going forward, but it's not a fair, accurate

24    representation of the consolidated notes log.

25            I'm not sure Exhibit 21 that you're

                                                        17

1     looking at, when it was produced, if it is the

2     archived copy or the current copy on their

3     system.

4            MR. GOWER:  Well, I sure don't know,

5     because all I've got are documents that came

6     dribbling in over a period of time.  And, now,

7     y'all ought to know more about your documents

8     than me.

9            MS. ROSE:  Which I would be happy to get

10    clean copies of what was produced to you in

11    discovery where we can identify and have the

12    witness testify as to which is the archived

13    copy and which copy is the recent two-year copy

14    pulled off of the current system.  So if you

15    would like to do the line-by-line analysis, we

                         Page 15

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

16          can; otherwise, this is -- and it may be easier

17          to go off the record with this.  But it's not a

18          fair, accurate representation of what was given

19          to you in discovery, knowing that there's an

20          archived copy, as she testified, that has

21          records further than two years back and the

22          notes that are on the system today.

23   BY MR. GOWER:

24          Q      Let's -- let's go ahead.  Look -- if you

25   will, look at Plaintiff's Exhibit 21, the very first

                                                              18

1    entry, and look at Exhibit 20-A, the cut-and-paste

2    version.  See, it says May 6, '09?  Is was the first

3    entry.

4          A      May 6, '09, yes.

5          Q      Uh-huh.  And -- and you see, let's go to

6    May 6, '09.  11:34:13, reversed $1,300 from LN, loan

7    number, so and so; same day re-ap to another loan

8    number.  Do you see that?

9          A      Yes.

10         Q      Okay.  Now looking at Plaintiff's Exhibit

11   21, do you see the next entry above that is May 12,

12   '09, and it -- can you read what that says?

13                MS. ROSE:  On which exhibit?

14                MR. GOWER:  21.

15         A      This indicates -- it reads score 006,

16   5/11/09, AGT EI6G, days delinq, D-L- -- D-E-L 011

17   RISK.

18   BY MR. GOWER:

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

19      Q       Okay.  Why isn't that on the

20  cut-and-paste version?

21      A       In the system, there are two ways to

22  retrieve notes.  There's one that shows all of the

23  notes that are on the log, which shows every

24  department.  And then this one shows if it's just the

25  customer service and servicing notes.

                                                                19

1               That's what I -- it appears to me;

2   because this 2006 is not on there.  I do not

3   believe -- I don't know who did this copy-and-paste.

4       Q       Do you know why a copy-and-paste was

5   done?

6       A       Again, I do not.

7       Q       When you say "copy-and-paste," how was it

8   done?

9       A       I didn't perform the task, so I don't

10  know exactly how it was --

11      Q       But when you say --

12      A       -- done.

13      Q       How do you know it's copy-and-paste?

14      A       To me it appears copy-and-paste because

15  it's the data from the body of the loan, the body of

16  the notes.

17      Q       Some of it?

18              Well, let's at the very next --

19      A       I --

20      Q       Excuse me.

21      A       Sure.  Go ahead.

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

22      Q      The very next one on Exhibit 21, on May

23   18, '09, that also is not on the copy-and-paste

24   version.  It says, Notice, delinquent, P-198.

25      A      Right.

20

1       Q      Why isn't that on there?

2       A      Again, I didn't produce this document, so

3   I don't know.

4       Q      And then May 20, '09, the very next one,

5   can you read what that says?

6       A      TFH TEL RES TEL DISC.

7       Q      What does that mean?

8       A      It appears that there was an attempt to

9   contact the residence.

10      Q      What is TFH?  Is that the --

11      A      I don't --

12      Q      -- person's -- person's name?

13      A      Yeah, that's the person's initials, user

14   ID.

15      Q      And TEL REC- -- S means what?

16      A      Telephone residence.

17      Q      And TEL DISC, what does that mean?

18      A      I'm not sure what that means.

19      Q      All right.  And then we've got the -- two

20   more on May 20th, that are not on the cut-and-paste.

21   Do you see that?

22      A      Two more on the -- this one?

23      Q      Uh-huh.

24      A      Okay.  And which date?

Page 18

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

25        Q        May 20th.

21

1         A        May 20th.   The same description?

2         Q        Yep.

3         A        Yes.

4         Q        So we have three entries on May 20th that

5    are on one log but are not on the cut-and-paste log?

6         A        Uh-huh.

7         Q        And then let's go to the next one, is

8    May 22, '09.  And can you read what that says?

9         A        That says XC067 follow up 1-month letter.

10        Q        What does that mean?

11        A        That appears that it is a

12   system-generated letter sent to the customer.

13        Q        And why is that not on the cut-and-paste

14   version?

15               MS. ROSE:  Objection; I believe she's

16          already testified.

17   BY MR. GOWER:

18        Q        Can you --

19        A        I have testified that is the same reason

20   as I've given before.

21        Q        Which is?

22        A        I did not produce this document, so I

23   don't know.

24        Q        So the answer is you don't know?

25        A        Right.

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt
22

1      Q      All right.  And then the next entry above

2    that one is May 22, '09.  Can you read what that is?

3      A      Again, that says TEL RES, no answer.

4      Q      Do you have any idea why they were

5    calling, trying to call David Brash?

6      A      It would appear to me, by the records,

7    they were attempting to call him regarding his

8    mortgage loan.

9      Q      And on -- so we've got -- on May 20 --

10   May 20th, we've got three phone calls, and May 22nd,

11   we've got a letter, and then May 22nd, we've got

12   another phone call to David?

13     A      Right.

14     Q      And based on what you know now, don't you

15   know -- are you aware that these are calls where they

16   were telling him that he was delinquent on his loan?

17     A      I'm not 100 percent sure that that's the

18   reason for the phone call.

19            (Thereupon, marked for identification,

20         Plaintiff's Exhibit P-1.)

21   BY MR. GOWER:

22     Q      Well, we know, don't we, that on

23   May 22nd, '09, they sent him a letter -- they sent him

24   a late payment notice, Plaintiff's Exhibit 1 -- I'm

25   sorry, May 16th, '09.

23

1            MR. GOWER:  Here's your copy of all

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

2         these.

3    BY MR. GOWER:

4         Q       Here's your copy of all these.

5         A       Thank you.

6         Q       If you would, look at Plaintiff's Exhibit

7    1.  You see that's a late payment notice, sent on

8    May 16th, '09 --

9         A       Yes.

10        Q       -- to David.

11                And then on May 22nd, '09 --

12                MS. ROSE:  Wait.  I'm sorry, the late

13           payment notice -- oh, it is dated May 16th.  I

14           apologize.

15                (Thereupon, marked for identification,

16           Plaintiff's Exhibit P-2.)

17   BY MR. GOWER:

18        Q       Okay.  And then on May 22nd, '09,

19   Plaintiff's Exhibit 2, do you see where they're

20   sending him a late payment notice -- I mean a letter

21   that says he's behind on his payments?

22        A       Yes, it appears that that is a letter

23   indicating we have not received his payment.

24        Q       Okay.  Let me ask you this:  We know --

25   you know, don't -- don't you, that Coldwell Banker was

                                                        24

1    saying that David was late on his April '09 and his

2    May '09 payments?

3                 MS. ROSE:  Object to form.

4                 Go ahead.

                    Page 21

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

5       A       I am not aware of the April payment.  It

6   shows that this is indicating the May payment.

7   BY MR. GOWER:

8       Q       Well, have you listened to any of the

9   telephone calls that David had with these people in

10  India, trying to get his account straightened out?

11      A       I only saw the transcripts of the one

12  phone call, and I listened to one phone call regarding

13  the May payment.

14      Q       Okay.  And are you aware that they were

15  saying the that -- that he was behind on his April and

16  his May payment?

17      A       According to the notes that I read, it

18  looked like the discussion was regarding the May

19  payment.

20      Q       Okay.  We'll get back to that in just a

21  minute.

22              Let me ask you, on Plaintiff's Exhibit 2

23  where it says here -- this is what I call -- this

24  would be fair to say this is a collection letter?

25      A       Yes.

                                                      25

1       Q       And May 22nd, '09, it says if you've got

2   any questions or whatever, call this number.  Do you

3   see that?

4       A       It says that, yes.

5       Q       Okay.  And when you call that number,

6   isn't that where you get somebody in India?

7       A       I'm not familiar with the routing of the

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

8    800 numbers and where those routing calls go to and

9    which site that -- the call center.

10        Q     Well, do you mind if we call that number

11    right now and see who we get?

12          MS. ROSE:  I'm going to object to the

13        form.  I think if you ask her another question

14        about where the calls could be routed to, it

15        might --

16    BY MR. GOWER:

17        Q     Well, where are the calls routed to?

18        A     The calls could be routed to India; it

19    could be routed to the Philippines; or it could be

20    routed to our Mount Laurel office.

21        Q     How do you determine which -- where the

22    calls are routed to?

23        A     I'm not over that site, but depending on

24    the -- the phone number and the -- the loan, being

25    Coldwell Banker, it will depend on where that phone

26

1    number is directed to.

2        Q     It would depend on the loan?

3        A     Excuse me?

4        Q     It would depend on the loan?

5        A     It depends on the loan.

6        Q     Some loans are handled through India,

7    some in the Philippines, and some in Mount Laurel?

8        A     That's correct.

9        Q     And in David's case, he wound up with

10    India?

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

11      A       If you say that that is the case.

12              (Thereupon, marked for identification,

13          Plaintiff's Exhibit P-23.)

14   BY MR. GOWER:

15      Q       Okay.  Well, let's look at -- let me get

16   something here.  Let me give you Plaintiff's Exhibit

17   23, which is a series of phone calls that David had

18   with Coldwell Banker and that we -- some of them y'all

19   typed up, and the rest of them we typed up.  And --

20              MS. ROSE:  Your office typed up all of

21          23?

22              MR. GOWER:  We typed up everything y'all

23          sent us on disks.

24              MS. ROSE:  Okay.

25      A       So this is from the disk that we gave

                                                        27


1    you --

2    BY MR. GOWER:

3       Q       Yes, ma'am.

4       A       -- you typed this up?

5    BY MR. GOWER:

6       Q       Yes, ma'am.  It took about a week or so.

7               And what I'd like to do is for you to

8    look at this one on Plaintiff's Exhibit 23, this phone

9    call, and let's see if we can -- do you know what date

10   it took place on?

11              MS. ROSE:  And for my understanding, is

12          this Exhibit 23 one telephone call, or this is

13          a transcript of all three disks that were

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

14          produced?

15                    MR. GOWER:  It's -- no, this has got two

16          phone calls on it.

17                    MS. ROSE:  And where is it -- where are

18          the phone calls separated; is it by the dotted

19          line?

20                    MR. GOWER:  Yes, yes.

21                    MS. ROSE:  Okay.

22                    MR. GOWER:  Well, it's got -- no, it's

23          got more than that on it.  It's got one, two,

24          three -- it's got four calls.

25          A       And this is from one disk?

                                                          28

1     BY MR. GOWER:

2           Q       Yes.

3                    MS. ROSE:  This is four calls from disk

4           three.  Is that correct?

5                    MR. GOWER:  I don't know -- yes, yes,

6           yes.

7                    MS. ROSE:  Okay.  Can we go off the

8           record for a minute?

9                    MR. GOWER:  Let's just stay on the

10          record.

11                    MS. ROSE:  I'm wondering if there

12          might --

13                    Were the disks presented in any order?

14                    MS. DENMARK:  Yeah, we have a disk

15          labeled disk three that was produced to

16          Mr. Gower.

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

17          MS. ROSE:  Were they in order of Bates

18      stamp?

19          MS. DENMARK:  There are dates on the

20      disk.

21          MS. ROSE:  Okay.

22          And your question on the record that

23      hasn't been answered yet is for the witness to

24      identify a timeline or a date for these

25      telephone calls?

                                                    29

1           MR. GOWER:  I forgot what my question

2       was.

3           MS. ROSE:  I'm sorry.  I'm -- I was just

4           trying to help facilitate an answer if she has

5           the knowledge to it, or if we need to go back

6           and get that answer.

7   BY MR. GOWER:

8       Q      Okay, let's go ahead.  Look at this first

9   call on Exhibit --

10      A      Twenty-three.

11      Q      -- 23, yes, ma'am.  Thank you.

12          He's talking with -- first it says,

13  Thanks for calling the mortgage service center.  My

14  name is Rensie.  And we couldn't understand what the

15  last name was.  And he goes through the identification

16  process.  And this is David talking to this fellow in

17  India, and -- and --

18      A      May I interrupt?

19      Q      Sure.

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

20    A         You say it's in India.  Did -- did --

21    Q         Well, it may be in the Philippines --

22    A         Did she --

23    Q         I don't know where --

24    A         -- say that she was in India?

25    Q         No, but you can listen and it's not

30

1    somebody that is from the South.

2         A         Well, we don't -- that's not from the

3    South?  That Southern accent.

4         Q         It's -- it's -- you can -- you can

5    listen -- you can listen to it and you know they're

6    not from Columbus, Georgia, or not anywhere around

7    here.

8                   So let's go --

9         A         We do hire many people from the South,

10   so. . .

11        Q         I understand.  Well, we thank you.  We

12   need -- we need all the employment we can get.  We are

13   choking along at nine-point-something percent --

14        A         But we're also a very diverse company,

15   so, you know --

16        Q         You can -- I'll agree with that.  All

17   right.  If you will --

18        A         Sorry to interrupt.

19        Q         That's fine, that's fine.  If you will,

20   look down here on the second page, the last paragraph?

21                   MS. ROSE:  Just so I'm clear, the first

22              conversation on page 1 ends on page 1,

**Page 27**

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

23          according to the document you prepared?

24                    MR. GOWER:  It -- it appears to, yes.

25                    MS. ROSE:  Okay.

♀

31

1    BY MR. GOWER:

2          Q          So now we're on the second call.  On the

3    second call, it says my name is Riyaz, R-I-Y-A-Z.

4          A          Uh-huh.

5          Q          And go down there, and the last paragraph

6    there on that page says, Just give me one moment.  In

7    the month of April, the payment -- oh, yes, there's

8    some kind on confusion or mess up.  This is Coldwell

9    Banker talking.  I can see the payment for the month

10   of April has been applied twice.  Let me check that

11   once again for you.  Yes, I do see that the payment

12   for the month of April was applied twice.  It was

13   applied on April 3rd for the month of April and also

14   on May 6th.  I can see it has been applied towards the

15   month of April.  Don't worry, sir, I will get you

16   connected to the right department.  They will be able

17   to fix the issue for you.  Also, now there is some

18   kind of misapplication.  Now you are only due for the

19   month of June.

20                    Do you know what that's all about?

21         A          I believe it's regarding -- I can't speak

22   for how he interpreted the history on -- on the

23   system, but -- or she -- it looks to me that it is

24   regarding a May payment.

25         Q          Well, what's he saying?  What's this

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

⚲

32

1   person saying to David?

2       A       She's saying that according -- well, I

3   can go by your notes what she's saying.  And I don't

4   know -- I don't want to interpret for her, but

5   according to the history that she -- she or he sees a

6   payment being applied towards the April payment, and

7   then another payment that was applied towards the May

8   6 payment.

9       Q       Okay.  Let's just skip over something.

10  You know -- you what know what this lawsuit is about,

11  don't you?

12      A       I do.

13      Q       What is it about?

14      A       It's about a missing payment for the

15  month of May.

16      Q       And?

17      A       October 2009.

18      Q       All right.  Well, what caused the

19  payments to be missing?

20      A       What caused the payment [sic] to be

21  missing was the information that was provided to

22  Coldwell Banker Mortgage from the DFAS, the military

23  office, was the incorrect loan number or lack of loan

24  number on that payment.

25      Q       Which payment?

⚲

33

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

```
 1      A        Both payments.

 2      Q        The May payment and the October --

 3      A        The May payment, every payment.

 4      Q        I'm sorry?

 5      A        Every payment.

 6      Q        Every payment?

 7      A        Yes.

 8      Q        From the very beginning?

 9      A        Yes.

10      Q        Wait a minute, now.  Are you saying

11   that -- that the United States Army screwed up this

12   account from the very get-go?

13      A        No, I'm not saying that.

14      Q        What are you saying?

15      A        What I'm saying is the information

16   provided to the Army --

17      Q        Provided to the Army?

18      A        Provided to the DFAS --

19      Q        Now, what --

20      A        -- office --

21      Q        -- is DFAS?

22      A        The defense -- I forget what it stands

23   for.

24      Q        Anyway, it's the Army?

25      A        Well, it's military.
```

34

```
 1      Q        Military, okay.

 2               MS. ROSE:   The allotment office?

 3      A        The allotment office.
```

Page 30

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

4    BY MR. GOWER:

5         Q        Okay.

6         A        That they do their pay and allotment

7    payments.

8         Q        Okay.

9         A        The information provided to the allotment

10   office is what they gave, included our bank account

11   number and not his loan number.

12        Q        So are you saying that David screwed up

13   or that the Army, military screwed up?

14        A        It's hard to say, depending on the

15   information that was given to the Army.  If you -- I

16   would have to see the original information provided to

17   the Army to see what information was given.  I

18   can't --

19        Q        Okay.

20        A        I don't want to speak for the Army that

21   they messed up.

22        Q        Okay.  So you're saying that the -- the

23   military gave the incorrect information from the very

24   get-go?

25        A        Yes.

35

1         Q        And continued to give the wrong

2    information?

3         A        Yes.

4         Q        But why did it go from '08, his first

5    payment --

6         A        Uh-huh.

                            Page 31

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

7     Q       -- to May of '09 without him -- without

8     it getting screwed up on y'all's part?

9     A      Okay, the reason that happens -- it's a

10    very manual process on our part, giving loans without

11    correct information.

12    Q       Giving loans?

13    A       Giving the payment, not the loan.  Giving

14    the information for the loan payment was incorrect.

15    So more information is necessary.

16           So my department will extract that

17    information and compare it to the previous months'

18    payments.  Those payments -- how do I describe it?

19    The same -- typically, the same loans that we get

20    without the loan numbers are the same.  So in order to

21    have a manual review to re- -- to eliminate the manual

22    review, we can bump it up.  And every month it's the

23    same loans.

24    Q       What are you saying?

25    A       What I'm saying is the information that

36

1     we get from the military that it does not have the

2     correct loan numbers, we have to manually review.

3     Q       What do you do?

4     A       We research; we look at the previous

5     month's file to compare payment amounts to confirm to

6     get the -- to obtain the correct loan number.  And

7     then we can bump it up to this file.

8     Q       What do you mean bump it up?

9     A       Match, compare the two, reconcile.

Page 32

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

10      Q       Okay.  So are you saying from the very
11  beginning y'all had to do that?
12      A       Yeah.
13      Q       And you got it right?
14      A       Yes.
15      Q       But in May you got it wrong?
16      A       Yes.
17      Q       Well, why did you get it wrong in May
18  when you got it right the other times?
19      A       In the month of May, there were multiple
20  payments -- let me rephrase that.  In the months prior
21  to the month of May, there were multiple payments for
22  1,300.  We had identified them properly.  In May,
23  Mr. Brash -- and if you don't mind me asking his rank,
24  because I -- I'd prefer calling him by his military --
25      Q       Just call him -- just call him David.

                                                        37

1       A       David, all right.  David -- David's loan
2   was for $1,300 that we received.  We had a [sic]
3   amount received the prior month too for 1,300.  In the
4   month of May, we received one 1,300.  It was
5   misidentified to not David's loan, but another loan,
6   manually.
7       Q       So Coldwell Banker messed up?
8       A       Based on the information that was given
9   from the military.
10      Q       In other words, David's $1,300 came in --
11      A       Yes.
12      Q       -- on time in May?

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

13     A     Yes.

14     Q     But y'all credited it to somebody else's

15  account?

16     A      From the information that we were to

17  research, yes.  Keep in mind, we are dependent on the

18  accurate information and loan number given to us.

19     Q      Well, why were you able to do it starting

20  in '08, 12 months in '08, and then four months in '09,

21  then now in May of '09 -- and there's nothing changed,

22  has it?

23     A     Nothing changed on David Brash's.

24     Q     All right.  And then now here we go in

25  May of '09 and y'all mess it up.  Isn't that right?

38

1     A     We misidentified it based on the

2  information that we had from the previous month.

3     Q      But you were getting the same information

4  that you had been getting all along, hadn't you?

5     A      Well, the information actually was

6  different in the month of May than we have in the

7  prior -- prior months.

8     Q     What was different?

9     A     The two 1,300 payments, there was one

10  that was received in May, was Mr. Brash's, and the one

11  that we used to received two was not there.

12     Q     Wait, say that again, now.

13     A     The one -- the two payments from the

14  prior month, there was only one, and that one received

15  in May was from Mr. Brash.

Page 34

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

16      Q      Well, let's look through here.  You got
17  all these military allotment things?
18      A      I do.
19      Q      Do you have them with you?
20      A      I don't have them with me now.
21             THE WITNESS:  Do you?
22             MR. GOWER:  Do y'all have an extra copy?
23             MS. DENMARK:  I can put together an extra
24        copy.
25             MR. GOWER:  Okay.  Thank you.

                                                    39

1              MS. ROSE:  Are you looking for --
2       A      A specific date?
3              MS. ROSE:  -- what time period?
4              MR. GOWER:  I just want to pick any time
5         period.
6              MS. ROSE:  See if you can find these.
7   BY MR. GOWER:
8       Q      Who -- who went through all these -- I'm
9   going to refer to them -- what do you call these
10  things?
11      A      It's just the military allotment detail.
12      Q      Okay.  On the military allotment details
13  that y'all provided me, who went through and yellow
14  lined all this stuff; did you do that, or anybody in
15  your department?
16      A      Yellow lined it?
17      Q      Yeah.
18             MS. ROSE:  You mean redacted?
                    Page 35

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

19    BY MR. GOWER:

20        Q      Yeah, you redacted everything, but then

21    y'all circled some of it.  Did your department do

22    that?

23        A      No.  I -- my department did the -- the

24    redacted of the account number and the -- and the

25    branch of the military.

40

1              MS. ROSE:  Before we go further, I'm --

2         if you would like, I can -- just checking the

3         dates of what we're going to present as an

4         exhibit.  I assume you want to tender this as

5         an exhibit.  I've got '08.

6              MR. GOWER:  Can you just show

7         February '08 and we'll use that as an example?

8              MS. ROSE:  To batch you gave me was

9         December of '08.  Let me -- you wanted February

10        of '08?

11             MR. GOWER:  That will be fine.  Well,

12        which one do you have there?

13             MS. ROSE:  This is starting

14        December 31st of '08 --

15             MR. GOWER:  All right.  I'll find --

16             MS. ROSE:  -- leading to January.

17             MR. GOWER:  All right.  I'll find that

18        one, then.  December 31st?

19             MS. ROSE:  Correct.

20             MR. GOWER:  Okay.  Do you mind handing

21        that one to her?

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

22          MS. ROSE:  And this is a -- I'm going to
23      let you see it.  It's a three-page -- no,
24      four-page -- and I'm sorry, maybe I'm not --
25      which date are you going by, the --

                                                    41

 1          MR. GOWER:  Let me see what you're --
 2          MS. ROSE:  I want to make sure --
 3          MR. GOWER:  Yeah, that's the -- that's
 4      the same one I've got.
 5          MS. ROSE:  Okay.  And your date on this
 6      is this date right here.
 7          MS. DENMARK:  Mr. Gower, these were
 8      produced to you.  I identified them by the
 9      consolidation date.
10          MR. GOWER:  Okay.
11          MS. ROSE:  So the consolidation on this
12      is December -- well, so you're starting
13      December 31st of '08 through October of '09?
14          MS. DENMARK:  Uh-huh.
15          MS. ROSE:  Okay.
16          MS. DENMARK:  That's how they were
17      identified in discovery.
18          MS. ROSE:  I'm going to hand this to the
19      witness.
20          MR. GOWER:  Okay.  Thank you.
21          MS. ROSE:  And if you want to ask her for
22      dates.
23          MR. GOWER:  All right.
24  BY MR. GOWER:
                        Page 37

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

25      Q        Miss Johnston, you've got the full -- the

42

1    military allotment -- what do you call it?

2        A        The military allotment log, or detail.

3        Q        Military allotment detail --

4        A        Yes.

5        Q        -- for December 31, '08?

6        A        Yes.

7        Q        And on the left-hand side, it's got batch

8    number and transaction number.  What does that mean?

9        A        To be honest, I really don't know what

10   those items refer to.

11       Q        Okay.  Then next it's got account number.

12       A        Yes.

13       Q        And is that supposed to be the loan

14   number?

15       A        Yes, that's the loan number.

16       Q        Okay.  And y'all redacted them all and --

17       A        Due to privacy, yes.

18       Q        -- and then you circled one; somebody did

19   at Coldwell Banker Mortgage.  And do you see that one?

20       A        The one that states 1,300?

21       Q        Yes, ma'am.

22       A        Yes.

23       Q        And that's David Brash?

24       A        That is David Brash.

25       Q        All right.  And you see it's got account

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt
43

```
 1    number ███9707?

 2         A       Yes.

 3         Q       That's y'all's bank account number, isn't

 4    it?

 5         A       That is our bank account number, and not

 6    his loan number.

 7         Q       Okay.  And then -- so you're saying that

 8    everybody else's on this sheet that's redacted did not

 9    have you -- that account number on it; it had their

10    loan number on it?

11         A       Not every single one.

12         Q       Well, what about the others; did --

13         A       Well, I can't give you that information.

14         Q       Well, I know, because it's redacted.

15         A       Right.

16         Q       But, I mean, do you -- wouldn't you

17    assume that everybody else had that loan number on it

18    except for David's?

19         A       No.

20         Q       What would it have on it?

21         A       It would have their loan number or the

22    ███9707.

23         Q       Why would some of them have the ███9707?

24         A       Same as Mr. Brash's.

25         Q       I'm sorry?
```

44

```
 1         A       It would be the same reason as
```

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt
2   Mr. Brash's.

3       Q       Which would be?

4       A       I can't ask -- I don't know if it's the

5   military; I don't know if it's the borrower giving the

6   military the information.

7       Q       Well, the borrower --

8       A       The information that we received has that

9   information.

10      Q       Well, the borrower wouldn't say that my

11  loan number is the bank account number of Coldwell

12  Banker, would it?

13      A       Depending on the interpretation on the

14  form that they fill out.

15      Q       Okay; all right.  So then you've got over

16  here remit name ███████-Army?

17      A       Yes.

18      Q       And you know that that's David Brash?

19      A       I know that's David Brash because of the

20  amount, and this is done obviously after the fact.

21  This isn't done during the month of December.  So we

22  know that the Army allotment for $1,300 is David

23  Brash's.

24      Q       And they refer to David as ███████-Army?

25      A       Yes.

45

1       Q       So anytime you see on any of these sheets

2   ███████-Army, that's David?

3       A       The $1,300 is David, from the military,

4   from the Army.

Page 40

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

```
 5     Q        What I'm saying is, every time you see on

 6  here ████-Army, that's David?

 7     A        In your documents?

 8     Q        Yes.

 9     A        Yes.

10     Q        Not in my document, in the military

11  allotment document.

12     A        Right.

13     Q        All right.  So if there's ever a question

14  about it, all you've got to do is look on the document

15  and look on ████-Army, and you say, aha, that's

16  David?

17     A        On these exhibits.

18     Q        Right.

19              MS. ROSE:  Was your question as to this

20        exhibit or when it is received from the

21        military allotment with that reference number?

22              MR. GOWER:  I don't understand what you

23        said.

24              MS. ROSE:  I think there's some

25        confusion.
```

46

```
 1              MR. GOWER:  I'm not confused.

 2              MS. ROSE:  I'm confused.

 3  BY MR. GOWER:

 4     Q        Are you confused, Miss Johnston?

 5     A        I'm not confused, but --

 6     Q        I didn't --

 7     A        -- I think Lisa's confused.
```

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

8      Q        I think it's just --

9               MS. ROSE:  I'll clean that one up, or

10         I'll come back to that later.  Sorry.

11   BY MR. GOWER:

12      Q        All right.  Let's -- if you would, look

13   at May '09, consolidated log May 1, '09.

14      A        Uh-huh.

15      Q        And you see there we've got in

16   May ███████-Army --

17      A        Right.

18      Q        $1,300.

19      A        What page are you looking at?

20      Q        Page 6.

21      A        Page 6, okay.

22      Q        Do you see that?

23      A        Yes.  Which one -- are you referring to

24   the $1,300?

25      Q        Yes ma'am.

                                                         47

1      A        Okay.

2      Q        And then there's also $1,251.73.  Why is

3   that?

4      A        Because it was very difficult to extract

5   that from -- it has no relevance to this at all.  It

6   was just difficult to extract that from the --

7      Q        Well, it's also got ███████-Army.

8      A        Yes, it does.

9      Q        Why is that?

10      A        It's the military's identifier.

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

11    Q       So we have two payments coming in here

12    that month for David from the military?

13    A       No.  What the remit name is is the

14    military branch office, not the customer, borrower's

15    name.

16    Q       I'm sorry, say it again.

17    A       It's not the borrower's name, it's the

18    branch of the military that they're in that we receive

19    the information.

20    Q       Oh, ████████-Army, that's not David?  Is

21    that what you're saying?

22    A       What I'm saying is ██████ is the branch

23    of the military that we received the payment from.

24    Q       What are you talking about branch, like

25    Army?

48

1     A       Army, Air Force, Navy, Marines.

2     Q       Okay.  So how do you know that this is

3     David's payment?

4     A       I know this is David's payment as of this

5     purpose when we were extracting this data.

6     Q       I don't understand you.

7     A       At the time that you asked us to remit

8     this information, I knew David was in the Army.

9     Q       Right.

10    A       I knew his payment was $1,300.

11    Q       Right.

12    A       So when we go through these, the payment

13    that we have for $1,300 from the Army was identified.

Page 43

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

14      Q       So every time you see a $1,300 payment

15   that has ▓▓▓▓-Army, you know that's David?

16      A       Well, that's how we identified it.

17      Q       That's how you did it, all right.

18              If you will, look on page 7 of the same

19   document.  And you see there where it's got $1,300,

20   ▓▓▓▓-USAF?

21      A       Yes.

22      Q       Why is that?

23      A       Because it is the same amount.

24      Q       Right.

25      A       It's a different branch, but it's showing

49

1    you that the branch is the U.S. Air Force.

2       Q       So that's not David?

3       A       Can't say that, but since he's not in the

4    Air Force, I would think that the Army would be

5    David's payment.

6       Q       All right.  Well, if this was so

7    confusing, why didn't y'all contact the military

8    allotment office and say, look, every month you are

9    sending in $1,300 for David Brash but you're listing

10   as the account number our bank account number --

11      A       Right.

12      Q       -- we would like for you to delete our

13   bank account number and put David's loan number down.

14   Why didn't y'all do that?

15      A       The challenge with calling the DFAS is

16   the information -- information that they use to

Page 44

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

17   identify their -- their customers, or their military

18   personnel, is a Social Security number.  I cannot

19   provide a third party somebody else's Social Security

20   number in order to identify them.

21        Q      Let me see if I'm understanding this

22   right.  You're saying that you couldn't tell the

23   military allotment office David's Social Security

24   number, and for that reason --

25   .    A      For privacy reasons, no.


50


1         Q      Really?  Well, how do you ever

2    communicate with the military allotment office about

3    transactions?  I mean, there are thousands of these

4    transactions.

5         A      These transactions come in

6    electronically --

7         Q      Right.

8         A      -- to our bank.  They are giving me that

9    information; I'm not asking for it.

10        Q      So as we sit here today, are you saying

11   that there's absolutely no way in the world that

12   Coldwell Banker Mortgage could have contacted the

13   military allotment office and said, look, folks, each

14   month you are sending in David's payment, and you're

15   putting down the account number as our checking

16   account number?  We want you to stop doing that, and

17   we want you to put in his loan number.  Are you saying

18   there's no way y'all could do that?

19        A      If -- legally, I cannot share personal

**Page 45**

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt
20      private information with a third party.

21          Q       Well, my question is, can -- are you

22      saying there's no way you could do that?

23          A       I could call, but I don't know if I would

24      get anywhere if I don't have the person's information.

25          Q       So the answer to your [sic] question is,

                                                            51

1       no, you couldn't straighten it out?

2           A       No.

3           Q       So here we go, and this is, what, a

4       30-year loan?  If he stays in the military and has

5       this allotment for 30 years, is he going to have this

6       thing, this problem every month for 30 years?

7           A       Well, I would hope Mr. Brash would

8       contact the DFAS office to have it corrected.

9           Q       Well, why didn't y'all tell him that that

10      was the problem?

11          A       I believe we did communicate that with

12      him.

13          Q       What did you tell him?

14          A       I believe we indicated in a letter that

15      the information that we received, the account number

16      was our loan number, was the infor- -- misinformation

17      provided to us.

18          Q       So you're saying that y'all wrote him a

19      letter and said that the military allotment office is

20      putting in our checking account number and not your

21      loan number?

22          A       Verbatim, I don't --

                          Page 46

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

23      Q       Well, in essence saying that?

24      A       -- remember saying that.

25              Yes.

                                                                52

 1      Q       All right.  Well, would you show me that

 2   letter?

 3              MS. ROSE:  She doesn't have any documents

 4         before --

 5      A       I don't have any documents.

 6              MS. ROSE:  We will have to --

 7   BY MR. GOWER:

 8      Q       You've got them right here.  That's all

 9   these right here.

10      A       Well, these are the notes.

11      Q       Okay.

12              MS. ROSE:  And you're referring --

13      A       Everything in here?

14              (Thereupon, marked for identification,

15         Plaintiff's Exhibit P-16.)

16   BY MR. GOWER:

17      Q       Yes, ma'am.  That's the -- these are all

18   the letters that David ever got at all.

19      A       Okay.  Actually the last page of that,

20   it's Exhibit 16.

21   BY MR. GOWER:

22      Q       Okay.  This is a letter of January 2010;

23   right?

24      A       That's correct.

25      Q       Well, that doesn't say that they've got

                        Page 47

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

♀

53

1    your checking account number as his account number.
2    It says the reason for the late payment was the
3    military allotment did not indicate the loan number.
4         A      That's correct; that's a true statement.
5         Q      Why didn't -- why didn't you say, look,
6    here, they've got our checking account number down
7    there instead of your loan --
8         A      I didn't write the letter; I don't know.
9         Q      Who wrote it, this Lori Emdin.
10        A      Lori Emdin.
11        Q      But this is January of 2010.  This is
12   after the problem has been straightened out; right?
13        A      Right.
14        Q      So he went through this problem in May
15   and then in October, and it took January 2010 before
16   y'all could -- could even give him a clue as to what
17   the -- what the problem was?
18        A      When it -- this letter, or the request,
19   was received by the office of the president area, that
20   was their response.  The call center reps would not
21   have that information.
22        Q      Wait a minute.  Say that again, now.
23        A      The call center rep --
24        Q      No, when David calls for a problem on his
25   account and talks to the call center

♀

54

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

1    representatives --

2         A       Right.

3         Q       -- the call center representatives don't

4    know that the problem is that when the military sends

5    in the amount each month, they've got the checking

6    account number for y'all instead of the loan number?

7         A       The call center does not have that

8    information.

9         Q       Well, what good does --

10        A       They're not privy to that information.

11        Q       What good does it do to call the call

12   center and say, I've got a problem, if they don't know

13   what in the heck's going on?

14        A       Well, it's a segregation of duties.  They

15   don't have all the -- the detailed information.

16        Q       I'm not trying to -- I'm not being

17   critical of you, because you're -- but you just happen

18   to be here representing Coldwell Banker.  But what in

19   the world good does it do to call over and over and

20   over again about a problem with your account when they

21   don't even know -- they don't even have access to the

22   information to get it to find out what's wrong?

23        A       Well, the call center is only responsible

24   for answering the phone calls.  And if further

25   research has to be done, then it's their duty and

                                                    55

1    their job to escalate that to have that research.

2    They cannot perform that research on their own.

3         Q       All right.  Well, let's say David calls
                        Page 49

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

4    and he talks to Mr. Whatever or Miss Whatever and he

5    tells about his problem and they say, we're going to

6    do a research.  Who does the research?

7        A       Depending on the situation.

8        Q       Let's talk about this indication

9    situation.

10        A       This situation; the research actually

11    would fall under my department.

12        Q       Did you research it?

13        A       Me personally, no.

14        Q       Did anybody?

15        A       Yes.

16        Q       Who?

17        A       My missing payment team.

18        Q       And what did they conclude?

19        A       They concluded that the information

20    received on the military allotment, the loan number

21    was the account number.

22        Q       Checking account number?

23        A       Checking account.

24        Q       When did they conclude that?

25        A       I would -- by the notes, it would be

56

1    concluded when the -- when the corrections took place

2    on the loan.

3        Q       When was that?

4        A       I believe it was in May.

5        Q       May of '09?

6        A       May of '09.

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

7    Q    And then it happened again in October?

8    A    Yes.

9    Q    And did y'all research it again?

10   A    Yes.

11   Q    And found it was the same problem?

12   A    Yes.

13   Q    But you hadn't -- nobody had told David

14   that that was the problem?

15   A    My department does not communicate with

16   the customer.

17   Q    But y'all figured out what the problem

18   was, but nobody at Coldwell Banker told David what the

19   problem was, did they?

20   A    Not from my department.

21   Q    Well, not from any department that you

22   know of, do you?

23   A    I don't know that.

24   Q    Would you agree that somebody at Coldwell

25   Banker should have told him, look, this is what the

1    problem is, this is why your account keeps getting

2    screwed up and we kept sending you these late notices

3    and turning you over to the credit bureau and all

4    that?

5         MS. ROSE:  Object to form.

6    BY MR. GOWER:

7    Q    Do you agree that somebody should have

8    told him?

9    A    I believe that somebody should have told
                    Page 51

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

10   him, but I also -- the information that we received

11   needs -- to be provided needs to be accurate.

12        Q     Well, obviously, you want accurate

13   information.  But my question is, don't you agree that

14   somebody at Coldwell Banker should have told David

15   what the problem was when y'all figured it out?

16        A        I would believe that's a fair statement.

17        Q     Why?

18        A     So he's advised to contact the military

19   office.

20        Q     And then he could have walked in there

21   and said, look, y'all need to take that checking

22   account number off and put my loan number.  And that

23   would have solved the problem, wouldn't it?

24        A     You would hope it would solve the

25   problem.

                                                    58

1         Q     Okay.  Well, the videographer said the

2    time is up; he has to change the tape.  So if you'll

3    bear with us, we'll maybe take a break.

4         A     Okay.

5              THE VIDEOGRAPHER:  Going off the video.

6         The time is 11:20 a.m.

7                   (VIDEO CAMERA OFF.)

8              (Thereupon, a recess was taken.)

9                   (VIDEO CAMERA ON.)

10             THE VIDEOGRAPHER:  We're back on the

11        video, 11:38 a.m.

12             MS. ROSE:  Now that we're back on the

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

13          record, I just wanted to make clear that this

14          deposition, while not under a formal notice

15          presented by plaintiff's counsel, this

16          deposition is taken per agreement by both

17          parties and mutually scheduled for today.

18              It is a 30(b)(6) deposition of my client,

19          and the topics for examination today, I am

20          under the understanding that the topics as

21          identified in an email sent from you to me,

22          dated Tuesday, July 13th, 2010, at 4:15, is the

23          scope of topics to be addressed today.

24              And my client would like to read and sign

25          after the deposition.

                                                        59

1               MR. GOWER:   Okay.  Can I see the email?

2               MS. ROSE:   Absolutely.

3               MR. GOWER:   Do you mind just reading the

4          email into the record?

5               MS. ROSE:   Not at all.

6               Lisa, for purposes of a 30(b)(6)

7          deposition, I would obviously like to depose

8          the representative of PHH Mortgage, Coldwell

9          Banker Mortgage who is the most knowledgeable

10          about Mr. Brash's account.  This person should

11          also be knowledge about the following:

12          Defendant's receipt of automatic monthly

13          payments and military allotments; how Defendant

14          credits such payments to the individual

15          customer accounts; Defendant's customer service

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

16            representative training; and how customer
17            concerns and complaints are handled;
18            Defendant's policy and procedures as they
19            relate to RESPA demands; and Defendant's policy
20            and procedures as they relate to the customer
21            account, quote, "review" or, quote, "audit"
22            process.
23    BY MR. GOWER:
24        Q      Miss Johnston, that's you.  Isn't that
25    right?

                                                          60

1         A      That is me.
2                (Thereupon, marked for identification,
3            Plaintiff's Exhibit P-8.)
4     BY MR. GOWER:
5         Q      All right.  Would you, please, ma'am,
6     look at Plaintiff's Exhibit 8.  And this is a letter
7     to David, dated November 13th, '09, from the cash
8     management department?
9         A      Yes.
10        Q      That's your department?
11        A      It is.
12        Q      But it's not signed by anybody?
13        A      No.
14        Q      Why not?
15        A      It's just a form letter, and I don't have
16    any -- we don't have any specific ability to sign the
17    letter.  So it's just a generic signature.
18        Q      You don't have any ability to sign a
                        Page 54

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

19    letter?

20         A        Well, we have the ability, but to image

21    it on the letter, we just -- we choose to put a

22    generic salutation on there.

23         Q        Why don't you have a name of somebody to

24    contact?

25         A        Because typically my department does not

                                                           61

1     speak with borrowers.  Borrowers need to work through

2     the customer service representatives, and we get any

3     tasks from our customer service department.

4          Q        And are these the folks over in India and

5     the Philippines?

6          A        Who are the folks?

7          Q        That they're supposed to work through.

8          A        You mean in the customer service

9     department?

10         Q        Uh-huh.

11         A        Well, that's just one branch that we get

12    it from, not -- we get it from all our branches.

13         Q        Okay.  Well, in this -- let me talk about

14    this particular letter.  Coldwell Banker has known

15    since January of '08 that David's account is being

16    paid through a military allotment; correct?

17         A        Yes; that's how the funds are received.

18         Q        Each month?

19         A        Each month.

20         Q        And we had a screw-up in May, and we had

21    screw-up in October.  Now here they are in November,

                          Page 55

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

22    writing David, your department, saying that they want

23    David's bank transmittal routing number and account

24    number in order to check on his loan.

25                    Why in the world are they asking for his

                                                              62

1     personal checking account number and bank account

2     number when the payments are being made by the

3     military allotment and have been from day one?

4                    MS. ROSE:  Object to form.

5         A       Can I refer you to that --

6     BY MR. GOWER:

7         Q       Yes, ma'am.

8         A       -- and let's read that paragraph

9     together?

10        Q       Yes, ma'am.

11        A       Please provide bank transmittal showing

12    what routing number and account number that funds were

13    sent to.

14        Q       Uh-huh.

15        A       Sent to.

16        Q       Okay.

17        A       In order to verify if funds were received

18    here.

19        Q       What are you asking him?

20        A       We're asking -- we got an inquiry from --

21    it appears, by this letter, that we received an

22    inquiry to research --

23        Q       From David?

24        A       Excuse me?

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

25      Q      I'm sorry.  Go ahead.  I'm sorry.  I

63

1    didn't mean to interrupt you.

2        A        We received an inquiry.  I don't know

3    from who, without looking, where the inquiry came

4    from, about an issue that we needed to research

5    regarding Mr. Brash's payment.

6        Q        Okay.

7        A        Without pertinent backup documentation, I

8    cannot complete my research.

9        Q        What are you asking him to provide?

10       A        I'm asking him to provide a bank

11   statement showing me proof that these funds have been

12   debited so I can further research where the trail of

13   the payment was received.

14       Q        Okay.  Whose bank statement are you

15   asking for?

16       A        I'm asking for his bank statement showing

17   proof the funds have been debited.

18       Q        What good would that do when it's coming

19   from the military?

20       A        At the time that this was sent, that is

21   the information that was available.  At the time, we

22   do not know it's a military allotment.

23       Q        In November of '09 you didn't know that

24   his payments were being paid by military allotment?

25       A        This is a missing payment research

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt
64

1    request.

2        Q        Right.

3        A        Okay.  So the information that was

4    requested of them, they don't have proper information

5    in order to complete their research.

6        Q        Well, what my question is -- I'm trying

7    to make it simple.  We've got a screw-up in May and a

8    screw-up in October, and here we are in November and

9    y'all are writing him, asking for his bank account.

10               MS. ROSE:  Object to form.

11   BY MR. GOWER:

12       Q        Why is that?  What good would that do?

13       A        We are required and we need the

14   information for a missing payment showing proof that

15   funds have been debited from, or taken from, a

16   customer's account.  I cannot explain or -- you know,

17   without, you know, researching why they used the

18   terms, Please provide the bank transmittal; don't know

19   what efforts were taken to come up to that conclusion.

20       Q        What did -- what are y'all asking David

21   to do?

22       A        Provide proof that he made the payment.

23       Q        Well, he didn't make the payment; the

24   military did.

25       A        Yes, they did.  But the information that

65

1    this team would have had available to them didn't have

                              Page 58

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt
2   that, so they --

3     Q       What team?

4     A       -- sent a letter.

5     Q       What team?

6     A       The missing payment team.

7     Q       Now, who is -- is that your office?

8     A       Yes.

9     Q       So your office, the missing payment team
10   did not know that David's payment was being made
11   through military allotment?

12    A       I cannot say what research was done for
13   them to come to that conclusion.

14    Q       I'm just really confused.  I'm trying to
15   make this simple.

16    A       I know.

17    Q       From the very get-go, all David's
18   payments, except for the first one, was through
19   military allotment; right?

20    A       Yes, it was.

21    Q       And now here in November of '09, y'all --
22   y'all, Coldwell Banker, are asking him to send a copy
23   of his bank statement.

24    A       Based on a request that we received from
25   the customer service department.

66

1     Q       Well, what in the world good would that
2   do?

3     A       Probably at this point, it wouldn't do
4   any good.

Page 59

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

```
 5      Q       Why?

 6      A       Because we need to see it from his

 7  paycheck, because it comes out from his pay.

 8      Q       Well, he'd already sent y'all copies of

 9  his paystubs showing where it had come out every

10  month, hadn't he?

11              MS. ROSE:  Object to form.  She hasn't

12         testified to anything about that.

13      A       Yeah.

14  BY MR. GOWER:

15      Q       You're aware of that, aren't you?

16      A       I'm aware of -- please repeat that.

17      Q       Yes, ma'am, that I sent Coldwell Banker

18  copies of his paystubs.

19      A       You sent copies of his paystubs.

20      Q       Yes, to Coldwell Banker.

21      A       Yes, you did.

22      Q       Well, I'm -- I want to move on, but I

23  just -- to me this just seems completely stupid, to

24  write a letter saying, in November of '09, send me a

25  copy of your bank statement.  Doesn't it -- doesn't it
```

67

```
 1  seem stupid to you?

 2      A       I wouldn't term -- I wouldn't use the

 3  term stupid.  I would use the term, you know, we

 4  probably need to evaluate why they -- they took that

 5  route for research, but I wouldn't term -- term it

 6  stupid.  I would view it as a training opportunity to,

 7  you know, look to see why they thought that they
```

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

8     needed the bank transmittal.  And that's a training

9     opportunity.

10        Q       In other words, to straighten them out,

11    to teach them how to do it?

12        A       In a situation where somebody needs to be

13    coached, yes.

14        Q       So why didn't your -- this -- you said

15    this came from your department in November of '09, and

16    you said your department would manually every month go

17    to the military allotment forms and pick out David's

18    $1,300 payment and apply it to his account; right?

19        A       Right.

20        Q       Well, why in November of '09 are they

21    asking for him to send his bank statements, since it's

22    not coming out of his bank statement?

23        A       Again, I got a request from the customer

24    service area requesting us to research a missing

25    payment.

68

1         Q       I understand.  But what good would his --

2     why not send in my bank statements?  Would that do --

3     that'd do just about as much good as David sending in

4     his, wouldn't it?

5                 MS. ROSE:  Object to form.

6     BY MR. GOWER:

7         Q       I'm not trying to be funny.  I'm just

8     trying to figure out --

9         A       It's a opportunity to review why they

10    asked for the bank statement.

Page 61

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

11       Q       Well, you agree they shouldn't have,

12    don't you?  They should not have asked for his bank

13    statements?

14       A       It appears by the -- the information that

15    is known to me in front of me, that I wouldn't have

16    asked for a bank statement; but I have all this

17    information available to me.

18       Q       Well, your people had the same -- I mean,

19    there's nothing new and --

20       A       They didn't have this paperwork in front

21    of them.

22       Q       It was -- it was there at Coldwell

23    Banker, wasn't it?

24       A       In a different area, in a different form.

25       Q       But it could be gotten, couldn't it?

                                                             69

1        A       It could be retained.

2        Q       Okay.  Well, let's -- do the -- when you

3     call up the number that they give you on here when

4     you've got a problem with your account, such as David

5     did, and you get whoever, do they have access to the

6     consolidated note log?

7        A       Yes.

8        Q       Do they have access to you?

9        A       Do they have access to me?

10       Q       Uh-huh.

11       A       No.

12       Q       Why not?

13       A       Because I don't take customer calls.

                          Page 62

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

14       Q       No, I'm talking about the Coldwell Banker

15   people.  When the customer calls in and gets whoever,

16   Mr. Whoever and wants to -- they want to know about

17   their account, does the -- does that Coldwell Banker

18   person that David is talking to have access to you?

19       A       To me personally?

20       Q       Yeah, yeah.

21       A       No.

22       Q       Do they have access to anybody in your

23   department?

24       A       Through our procedures, yes.

25       Q       And can they say, look, I'm going to call

70

1    up that one.  This is -- David Brash is on the phone;

2    we've talked to him for an hour and a half; can you

3    figure out what's wrong with his account?

4        A       Based on a task received in my department

5    that they would generate, yes.

6        Q       What is that called?

7        A       What is that call?

8        Q       Uh-huh.

9        A       I'm not following.

10       Q       Do they have to fill out some kind of

11   form and send it in or something?

12       A       There is a task or notes, yes, that they

13   have to complete.

14       Q       What does it say?

15       A       It's a free form.

16       Q       It's a what?

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

17      A       Free form.

18      Q       What's that mean?

19      A       Meaning they can type whatever they need.

20  There's a missing payment task, and I believe in the

21  notes there's that task.  It's a specific task.

22      Q       Well, I haven't been provided any of

23  them.  Are those in paper?

24      A       They're -- it's not in paper; it's on the

25  notes.

                                                            71

1      Q       It's on an email?

2      A       It's on the notes.

3      Q       There's just a notation on the

4  consolidated note log?

5      A       Yes.

6      Q       I follow you.  All right.

7              The collection department, is that under

8  you?

9      A       It is not.

10      Q       What information does the call center

11  have access to?

12      A       Can you rephrase that and be specific.

13      Q       Yeah.  In a situation such as David, when

14  he's calling up there and saying, look, y'all are

15  sending me these late notices; I've made my payment

16  through the military allotment, what's going on?

17      A       What the customer service has available

18  to them are different screens that they utilize in

19  order to obtain the information that's being asked of

Page 64

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt
20   them.  There's various different screens for them to

21   review in order to review the loan.  One of those

22   screens is -- is a history screen, account history

23   screen.  They make a lot of their determinations based

24   on those screens.  They review the notes -- they

25   should review the notes and answer any inquiries that

                                                      72

1    are brought to them.

2              They -- they only have available to

3    what's on their screen.

4         Q     The account history screen, what's on it?

5         A     It just shows the -- any activity on the

6    history.

7         Q     Payments received?

8         A     Payments received, disbursements made.

9              (Thereupon, marked for identification,

10        Plaintiff's Exhibit P-22.)

11   BY MR. GOWER:

12        Q     Okay.  Let me ask you to look, please,

13   ma'am, at Plaintiff's Exhibit 22.

14        A     Okay.

15        Q     Let me see.  Let me find it for you.

16             MR. GOWER:  And I've given you a copy of

17        that, Miss Rose.

18   BY MR. GOWER:

19        Q     This is a telephone call that David made

20   with Mardy Guzman.  Do you see that?

21        A     Yes.

22        Q     And -- and David has gotten a late

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

23   payment notice and he's calling in, inquiring about

24   it.  Do you see that?

25        A        Uh-huh.

                                                              73

1         Q        Are you with me?

2         A        Yes.

3         Q        Do you see on the second page where he

4    says, Thank you very much, Mr. Brash -- Brash; please

5    stay on the line, sir.  Thank you for holding,

6    Mr. Brash.  According to the account, your military

7    allotment office called us and identified a payment

8    amount that was posted on the account incorrectly.

9                  Do you see that?

10        A        I do.

11        Q        And David said, Okay, so the military

12   called you and told you that a payment was posted

13   incorrectly.  How did it get posted incorrectly?  I

14   guess would be my question.

15                 And then Mr. Guzman says, Yes, Mr. Brash,

16   unfortunately, that's the only notes we have on the

17   account.  They -- which is the military -- asked for a

18   reversal and they reversed it to a different loan

19   number, and that was back -- back in [sic] May 6,

20   2009.  Is that the truth?

21        A        I don't know.  This is the first time I'm

22   seeing this.

23        Q        But this is what Coldwell -- I'm not --

24   listen, I'm not blaming you, but you -- you're just --

25   you're not all of Coldwell Banker.  But here's the

Page 66

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

♀

74

1  people that David's talking to, Mr. Guzman, and he
2  says, The military allotment office called us.
3           Now, can you look at the consolidated
4  note log and tell me where it's in there that the
5  military called Coldwell Banker and said reverse
6  David's payment?
7      A      Well, I have reviewed the notes, and I
8  did not see anything to that effect.
9      Q      Well, this is what he's telling David,
10  isn't it?
11          MS. ROSE:  Presumably.  Again, this
12      document was prepared by your office.
13          MR. GOWER:  You can listen to it.  We'll
14      play it to the jury, and you can hear it;
15      Mr. Guzman is telling David.
16  BY MR. GOWER:
17      Q      In your experience, does the military of
18  the United States government pick up the phone and
19  call Coldwell Banker and say, look here, we want you
20  to reverse the $1,300 we sent y'all on David's
21  account?  In your experience have they ever done
22  anything like that?
23      A      Not that I've seen.
24      Q      And how long have you been with Coldwell
25  Banker?

♀

75

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

1  A  Nineteen years.

2  Q  And y'all have been getting military

3 allotments for 19 years?

4  A  Yes; we have been got -- getting them for

5 quite a few years, yes.

6  Q  All right.  And never in the whole wide

7 world have you ever heard of the military allotment

8 office calling up and talking to Coldwell Banker and

9 saying, look here, I want you to reverse a payment we

10 sent you?

11  A  No.  Just to make it clear, I'm not in

12 the call center, so if they called the call center, I

13 wouldn't be privy to that, unless they would contact

14 me and let me know that they received a call.  So for

15 them to call my department, no, I haven't experienced

16 it.

17  Q  Have you ever heard of them calling

18 anybody and saying, I want you to reverse a payment?

19  A  Well, I don't know that.

20  Q  I know, but have you ever heard of it?

21 Have you ever -- have you ever heard of the military

22 calling Coldwell Banker, anybody at Coldwell Banker

23 and say, look here, I want you to reverse a payment we

24 sent you?

25  A  I've never heard of it.  That doesn't

76

1 mean it wouldn't ever happen.  I don't --

2  Q  Would you agree that the way the

3 government works is they send things in triplicate and

Page 68

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

4    four-triplicate and all that; they don't just pick up

5    the phone and call?

6        A        I don't have that experience.  I don't

7    know.

8        Q        Well, why in the world -- you're the

9    person most knowledgeable about David's account.

10                Why in the world would Mr. Guzman tell

11   David that, The military allotment office called us

12   and wanted us to reverse a payment?

13       A        I don't know what Mr. Guzman used in

14   order to make that statement.

15       Q        Well, as we sit here today, you know what

16   he told David is not what happened?

17       A        According to the notes, it's not

18   indicated in the notes that it didn't happen.

19       Q        See down here in the -- look down here on

20   the same page where it's -- and I'm just going to

21   point to it so you can see right here.  I'm pointing

22   right along in here.

23       A        Okay.

24       Q        If you can get to that paragraph, please,

25   ma'am.

77

1        A        Sure.

2        Q        Well, I'm just going to say in the middle

3    of the thing, Okay, Mr. Brash, yes, sir, I made a

4    mistake there.  I think with another customer that we

5    have, you both have the same military allotment

6    office.  And what happened was the military allotment

Page 69

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

```
 7    called for that loan, but they sent your monthly
 8    payment for April to that loan, and it was reversed,
 9    and then it was reversed back to your loan on May 6th.
10    So for May, we really haven't received anything yet.
11              Does that make any sense at all?
12    A       Can I read the first paragraph --
13    Q       Yes, ma'am.
14    A       -- full paragraph, please?
15    Q       Read all you want.
16    A       It appears to me by this transcript that
17    Mr. Guzman is indicating that there's some activity on
18    a loan; that they reversed $1,300.  And then he says,
19    Hold on a minute; I got it the other way around;
20    meaning, whatever he explained to Mr. Brash earlier,
21    he had misspoken.  And that I believe that comment,
22    that's where he made the mistake, is he gave him the
23    wrong information, according to the prior
24    conversation.
25    Q       Does any of this make any sense?
```

78

```
 1    A       To me it does.
 2    Q       It does?
 3    A       Yeah.
 4    Q       About the military allotment office
 5    calling up there and saying reverse this --
 6    A       Well, he doesn't say that in this
 7    paragraph.
 8    Q       I know, but he previously said it did.
 9    A       Well, I'm referring to this paragraph.
```

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

10      Q       Okay.

11      A       So he's saying he made a mistake, because

12  when he started to explain the situation, he had it

13  reversed.  He also states, I think -- not that he

14  knows, but he thinks where you both have the same

15  military office.  What happened was military allotment

16  called for the loan, and they sent your monthly

17  payment for April to that loan.

18              I don't know where he's coming to that

19  conclusion -- based on the notes that I've reviewed,

20  where is he coming up with that conclusion --

21  conclusion military allotment called for that loan.

22      Q       Where -- where -- how in the world did he

23  come up with that?

24      A       I can't answer that.

25      Q       If you will, still on the same telephone

                                                        79

1   call, can you go back; go to this -- two more pages,

2   please, ma'am, and right here, I think it's page 4.

3       A       Uh-huh.

4       Q       Down here see where it says, Yes, sir,

5   the last payment; okay?

6       A       Okay.

7       Q       It's still Mr. Guzman in this long

8   conversation, and he said, Yes, sir, the last payment

9   that was received from your allotment is April 3rd.

10  And then on May 6th, that was reversed.  Somebody

11  called in and said it was misapplied, so we reversed

12  it and applied it to a different loan.  And then it
                        Page 71

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

13    was put back on the same day because of the mistake.

14    And then that's the last transaction that happened on

15    the account.

16              Again, he's talking about the military

17    calling in.

18        A     Well, it indicates somebody.

19        Q     Well, we know from what he's previously

20    said, it was the military, don't we?

21        A     I don't know if I would come to that same

22    conclusion.

23        Q     Well, what conclusion would you come to?

24        A     Well, somebody could be -- depending on

25    the notes and his -- his review of the notes, somebody

                                                              80

1     could be another department within -- within PHH.

2         Q     Well, can you look at the notes and see

3     if anybody -- if it's on there that anybody called in

4     and said to do all this reversing back and forth?

5         A     Do you know the date of this phone call?

6         Q     No, but it's relating to the April and

7     May.

8               Well, does it even make sense what he's

9     telling David?

10        A     To somebody not familiar with it, no.  To

11    somebody who is familiar with it, like myself, I

12    understand what they are saying.

13        Q     Okay.  What in the world is he saying?

14        A     What he's saying is the fact is he

15    received his first payment, his April payment, on

                          Page 72

102210-30(b)(6) PHH Mortgage Corp., (Kim Johnston) - Vol. I.txt

16   April 3rd, okay, on his history showing a payment.

17           He's showing on May 6th that that

18   April 3rd payment was reversed; it was taken away from

19   the loan.

20      Q      Why?

21      A      Based on information that was received.

22   And I would have to refer to the notes.

23      Q      Is this because he's saying that the

24   military called in and said reverse it?

25      A      I don't know that without looking at the

81

1   notes if it was the military allotment.  Again, I do

2   not see any --

3      Q      Well, we know it's military allot- -- all

4   this -- we're all talking about David, and it's all

5   military allotment.

6           MS. ROSE:  Well --

7      A      Right.  But I don't know if the military

8   allotment called to instruct that reversal.

9   BY MR. GOWER:

10      Q      I'm sorry?

11      A      I don't know if the military allotment

12   called to instruct to do that reversal.

13           MS. ROSE:  I think to help, would it help

14       you to look at the notes and an account history

15       to explain the -- to answer his question about

16       this April and May payment?

17           MR. GOWER:  Sure.  Go right ahead.

18      A      Yeah.  I wonder if these notes go to --
                        Page 73