**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | |
|---|---|
| DAVID BRASH, | |
| Plaintiff, | |
| v. | Civil Action Case No. 4-09-cv-146 (CDL) |
| PHH MORTGAGE CORPORATION, d/b/a/ COLDWELL BANKER MORTGAGE, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR A JUDGMENT AS A MATTER OF LAW OR,
IN THE ALTERNATIVE, A NEW TRIAL OR A REMITTITUR**

G. Lee Garrett, Jr.
Ga. Bar No. 286519
ggarrett@jonesday.com
David J. Bailey
Ga. Bar. No. 031800
djbailey@jonesday.com
Samantha Mandell
Ga. Bar No. 141689
smandell@jonesday.com
Jason T. Burnette
Ga. Bar No. 242526
jtburnette@jonesday.com

JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA  30309-3053
Telephone:      (404) 521-3939
Facsimile:      (404) 581-8330

W. Reese Willis III
Ga. Bar No. 767067
Lisa R. Rose
Ga. Bar No. 614204
Emilie O. Denmark
Ga. Bar No. 185110

MCCALLA RAYMER, LLC
Six Concourse Parkway
Suite 2800
Atlanta, Georgia 30328
Telephone:      (678) 281-6500
Facsimile:      (678) 281-6501

*Attorneys for Defendant PHH Mortgage Corporation*

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT AND SUMMARY OF THE ARGUMENT.............................. 1

ARGUMENT AND CITATION OF AUTHORITY .................................................................. 2

I.   Plaintiff's Negligence Claim Is Not Cognizable .............................................................. 3

    A.   Plaintiff's Negligence Claim Fails Because There Is No Evidence Of A
        Pecuniary Loss Resulting From A Non-Physical Injury........................................ 3

    B.   Plaintiff's Negligence Claim Is Preempted By FCRA ......................................... 6

    C.   Plaintiff's Negligence Claim Is Barred By Contract ............................................ 8

    D.   Plaintiff's Negligence Claim Fails Because There Is No Evidence Of The
        Ordinary Standard Of Care In PHH's Industry..................................................... 9

II.  The Emotional Distress Damages Are Unsupported By Fact And Law............................ 9

III. The Punitive Damages Awarded Against PHH Fail As A Matter Of Law ..................... 13

    A.   Georgia Law Prohibits Simultaneous Awards For Emotional Distress And
        Punitive Damages Here........................................................................................ 13

    B.   There Is No Evidence To Support The Award Of Punitive Damages Under
        Georgia Law........................................................................................................ 14

    C.   Georgia's Cap Of $250,000 On Punitive Damages Applies Because There
        Is No Evidence Of Specific Intent To Harm...................................................... 17

    D.   RESPA Preempts An Award Of Punitive Damages ........................................... 19

    E.   The Punitive Damage Award Violates Due Process............................................ 20

    F.   In All Events, PHH Is Entitled To A New Trial Or Remittitur On The Punitive
        Damages Award .................................................................................................. 30

CONCLUSION.................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page**

CASES

*Action Marine, Inc. v. Cont'l Carbon, Inc.*,
   481 F.3d 1302 (11th Cir. 2007) ...................................................................18, 26, 27

*Ard v. Sw. Forest Indus.*,
   849 F.2d 517 (11th Cir. 1988) ....................................................................................3

*Bach v. First Union Nat'l Bank*,
   149 Fed. App'x 354 (6th Cir. 2005) ........................................................................24

*Bach v. First Union Nat'l Bank*,
   486 F.3d 150 (6th Cir. 2007) ........................................................................24, 27, 28

*Bains LLC v. Arco Prods. Co.*,
   405 F.3d 764 (9th Cir. 2005) ....................................................................................29

*Bennett v. Am. Med. Response, Inc.*,
   226 Fed. App'x 725 (9th Cir. 2007) ........................................................................29

*Blust v. Lamar Adver. Co.*,
   813 N.E.2d 902 (Ohio. Ct. App. 2004) ....................................................................29

*BMW of N. Am., Inc. v. Gore*,
   517 U.S. 559 (1996) .......................................................................20, 23, 25, 29

*Bogle v. Orange County Bd. of Cnty. Com'rs*,
   162 F.3d 653 (11th Cir. 1998) .............................................................................2, 26

*Broadfoot v. Aaron Rents, Inc.*,
   409 S.E.2d 870 (Ga. Ct. App. 1991) ..........................................................................6

*Bryan v. James E. Holmes Reg'l Med. Ctr.*,
   33 F.3d 1318 (11th Cir. 1994) ....................................................................................2

*Burrell v. DFS Servs., LLC*,
   Civ. No. 10-2706 (DRD), 2011 WL 831923 (D.N.J. Mar. 3, 2011) ..........................7

*Campbell v. Chase Manhattan Bank, USA, N.A.*,
   No. Civ.A 02-3489(JWB) 2005 WL 1514221 (D.N.J. June 27, 2005) .....................7

*Carruthers v. Am. Honda Fin. Corp.*,
   717 F. Supp. 2d 1251 (N.D. Fla. 2010) .....................................................................7

**TABLE OF AUTHORITIES**

Page

*Castaneda v. Saxon Mortg. Servs.*,
  687 F. Supp. 2d 1191 (E.D. Cal. 2009)...................................................................9

*Catalan v. GMAC Mortg. Corp.*,
  629 F.3d 676 (7th Cir. 2011) .................................................................................8

*Christopher v. Florida*,
  449 F.3d 1360 (11th Cir. 2006) ...........................................................................13

*Clark v. Chrysler Corp.*,
  436 F.3d 594 (6th Cir. 2006) .........................................................................28, 29

*Cmty. Fed. Sav. & Loan Ass'n v. Foster Developers, Inc.*,
  348 S.E.2d 326 (Ga. Ct. App. 1986)....................................................................17

*Colonial Pipeline Co. v. Brown*,
  365 S.E.2d 827 (Ga. 1988)...................................................................................14

*Comcast Corp. v. Warren*,
  650 S.E.2d 307 (Ga. Ct. App. 2007)....................................................................15

*Cosmas v. Am. Exp. Centurion Bank*,
  No. 07-6099, 2010 WL 4961641 (D.N.J. Dec. 1, 2010)........................................7

*Cullen v. Novak*,
  411 S.E.2d 331 (Ga. Ct. App. 1991).............................................................15, 17

*Daka, Inc. v. McCrae*,
  839 A.2d 682 (D.C. 2003) ....................................................................................29

*Evans v. Willis*,
  441 S.E.2d 770 (Ga. Ct. App. 1994)...........................................................15, 16, 17

*Exxon Shipping Co. v. Baker*,
  554 U.S. 471 (2008)..............................................................................................28

*Fielbon Dev. Co, LLC. v. Colony Bank of Houston Cnty.*,
  660 S.E.2d 801 (Ga. Ct. App. 2008).......................................................................8

*Glynn County Fed. Emp. Credit Union v. Peagler*,
  348 S.E.2d 628 (Ga. 1986)...................................................................................14

*Goldsmith v. Bagby Elevator Co., Inc.*,
  513 F.3d 1261 (11th Cir. 2008) ...........................................................................26

*Goldstein v. Manhattan Indus., Inc.*,
  758 F.2d 1435 (11th Cir. 1985) .....................................................................12, 13

**TABLE OF AUTHORITIES**

*Graphics Prods. Distrib., Inc. v. MPL Leasing Corp.*,
    317 S.E.2d 623 (Ga. Ct. App. 1984) ..................................................................4

*Grassilli v. Barr*,
    142 Cal. App. 4th 1260 (2006) .........................................................................29

*Holbrook v. Stansell*,
    562 S.E.2d 731 (Ga. Ct. App. 2002) ...............................................................13

*Hutcherson v. Progressive Corp.*,
    984 F.2d 1152 (11th Cir. 1993) ...........................................................14, 16, 17

*Ins. Co. of N. Am. V. Valente*,
    933 F.2d 921 (11th Cir. 1991) ...........................................................................3

*J.B. Hunt Transport, Inc. v. Bentley*,
    427 S.E.2d 499 (Ga. Ct. App. 1992) ...........................................................18, 19

*Jarrard v. United Parcel Serv., Inc.*,
    529 S.E.2d 144 (Ga. Ct. App. 2000) .................................................................6

*Jenkins v. Gen. Hosps. of Humana, Inc.*,
    395 S.E.2d 396 (Ga. Ct. App. 1990) ...............................................................14

*Johansen v. Combustion Eng'g, Inc.*,
    170 F.3d 1320 (11th Cir. 1999) ...........................................................23, 25, 30

*Johnson v. CitiMortgage, Inc.*,
    351 F. Supp. 2d 1368 (N.D. Ga. 2004) .............................................................7

*Jurinko v. Med. Protective Co.*,
    305 Fed. App'x 13 (3d Cir. 2008) ....................................................................28

*Kemp v. AT&T*,
    393 F.3d 1354 (11th Cir. 2004) ...........................................................23, 24, 25, 26

*Knudson v. Wachovia Bank*,
    513 F. Supp. 2d 1255 (M.D. Ala. 2007) ........................................................7, 8

*Kodadek v. Lieberman*,
    545 S.E.2d 25 (Ga. Ct. App. 2001) ..............................................................16, 17

*Lee v. State Farm Mut. Ins. Co.*,
    533 S.E.2d 82 (Ga. 2000) ..............................................................................3,4

*Lincoln v. Case*,
    340 F.3d 283 (5th Cir. 2003) ...........................................................................29

**TABLE OF AUTHORITIES**

**Page**

*Long v. Trans World Airlines, Inc.*,
    704 F. Supp. 847 (N.D. Ill. 1989) ......................................................20

*McElgunn v. Cuna Mut. Ins. Soc'y*,
    700 F. Supp. 2d 1141 (D.S.D. 2010) .................................................29

*McLean v. GMAC Mortg. Corp.*,
    595 F. Supp. 2d 1360 (S.D. Fla. 2009) ..............................................20

*MDC Blackshear, LLC v. Littell*,
    537 S.E.2d 356 (Ga. 2000)..........................................................15, 16

*Minnix v. Dep't of Transp.*,
    533 S.E.2d 75 (Ga. 2000)..................................................................9

*Moreno v. Consol. Rail Corp.*,
    99 F.3d 782 (6th Cir. 1996) ..............................................................20

*Munford, Inc. v. Munford*,
    188 B.R. 860 (N.D. Ga. 1994) ...........................................................9

*Myers v. Cent. Fla. Inv., Inc.*,
    592 F.3d 1201 (11th Cir. 2010) ........................................................26

*Nationwide Mut. Fire Ins. Co. v. Lam*,
    546 S.E.2d 283 (Ga. Ct. App. 2001) ...............................................4, 5

*Neal v. Toyota Motor Corp.*,
    823 F. Supp. 939 (N.D. Ga. 1993) .................................................3, 12

*OB-GYN Assoc. of Albany v. Littleton*,
    386 S.E.2d 146 (Ga. 1989)................................................................4

*Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*,
    496 F.3d 1231 (11th Cir. 2007) ........................................................11

*Peer v. Lewis*,
    No. 08-13465, 2009 WL 323104 (11th Cir. Feb. 10, 2009) .................24

*Philip Morris USA v. Williams*,
    549 U.S. 346 (2007).........................................................20, 21, 22

*Read v. Benedict*,
    406 S.E.2d 488 (Ga. Ct. App. 1991) ................................................15

*Reeves v. Edge*,
    484 S.E.2d 498 (Ga. Ct. App. 1997)................................................13

**TABLE OF AUTHORITIES**

Page

*Roboserve, Ltd. v. Tom's Foods, Inc.*,
    940 F.2d 1441 (11th Cir. 1991) ...................................................................13, 30

*Rodriguez v. Farm Store Groceries Inc.,*,
    518 F3d 1259,1266 (11th Cir. 2008) ...................................................................30

*Roth v. Farner-Bocken Co.*,
    667 N.W. 2d 651 (S.D. 2003) ...................................................................29

*Ryckeley v. Callaway*,
    412 S.E.2d 826 (Ga. 1992)...................................................................6

*Sanders v. Brown*,
    343 S.E.2d 722 (Ga. Ct. App. 1986) ...................................................................12

*Sarsfield v. CitiMortgage, Inc.*,
    667 F. Supp. 2d 461 (M.D. Pa. 2009) ...................................................14, 19, 27

*Sarsfield v. CitiMortgage, Inc.*,
    707 F. Supp. 2d 546 (M.D. Pa. 2010) ...................................................................8, 19

*Sheppard v. Tribble Heating & Air Conditioning, Inc.*,
    294 S.E.2d 572 (Ga. Ct. App. 1982) ...................................................................27

*Sheppard v. Yara Eng'g Corp.*,
    281 S.E.2d 586 (Ga. 1981)...................................................................8

*Smith v. U.S.*,
    894 F.2d 1549 (11th Cir. 1990) ...................................................................2

*State Farm Mut. Auto Ins. Co. v. Campbell*,
    538 U.S. 408 (2003)...........................................21, 21, 22, 23, 24, 27, 28

*T.G. & Y. Stores Co. v. Waters*,
    334 S.E.2d 910 (Ga. Ct. App. 1985) ...................................................................17

*Tookes v. Murray*,
    678 S.E.2d 209 (Ga. Ct. App. 2009) ...................................................................18

*Tower Fin. Servs., Inc. v. Smith*,
    423 S.E.2d 257 (Ga. Ct. App. 1992) ...................................................................16

*Travis Pruitt & Assocs., P.C. v. Hooper*,
    625 S.E.2d 445 (Ga. Ct. App. 2005)...................................................................6

*Turner v. Firstar Bank, N.A.*,
    845 N.E.2d 816 (Ill. Ct. App. 2006) ...................................................................24

**TABLE OF AUTHORITIES**

Page

*United States v. Armour & Co.*,
  402 U.S. 673 (1971)..............................................................................22

*Viau v. Fred Dean, Inc.*,
  418 S.E.2d 604 (Ga. Ct. App. 1992)..............................................18, 19

*Waldrip v. Voyles*,
  411 S.E.2d 765 (Ga. Ct. App. 1991)......................................................13

*Wardlaw v. Ivey*,
  676 S.E.2d 858 (Ga. Ct. App. 2009)..............................................14, 15

*Warren v. Ford Motor Credit Co.*,
  693 F.2d 1373 (11th Cir. 1982)......................................................13, 30

*Westview Cemetery, Inc. v. Blanchard*,
  216 S.E.2d 776 (Ga. 1975)......................................................................13

*Williams v. ConAgra Poultry Co.*,
  378 F.3d 790 (8th Cir. 2004)..................................................................28

*Williams v. Motorola, Inc.*,
  303 F.3d 1284 (11th Cir. 2002)..................................................................3

**STATUTES**

12 U.S.C. § 2605(e)(1)(A).............................................................................10

12 U.S.C. § 2605(e)(2)(C).............................................................................10

12 U.S.C. § 2605(f)(1)..............................................................................19, 29

12 U.S.C. § 2616...........................................................................................19

15 U.S.C. § 1681h(e)..................................................................................7, 8

15 U.S.C. § 1681s-2(a)(2)...............................................................................7

15 U.S.C. § 1681t(b)(1)(F).............................................................................7

O.C.G.A. § 51-12-5........................................................................................13

O.C.G.A. § 51-12-5.1.....................................................................................13

O.C.G.A. § 13-6-10........................................................................................14

O.C.G.A. § 13-6-11...........................................................................13, 27, 29

O.C.G.A. § 51-12-5.1(b)................................................................................14

**TABLE OF AUTHORITIES**

**Page**

O.C.G.A. § 51-12-5.1(f), (g) .........................................................................................18

O.C.G.A. § 51-12-6 ......................................................................................................13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 59(a)(1)(A) ............................................................................................3

Fed. R. Civ. P. 50(b) ...............................................................................................2, 23

Fed. R. Civ. P. 59 ..............................................................................................2, 3, 12

Restatement (Second) of Torts § 8A ...........................................................................18

## PRELIMINARY STATEMENT AND SUMMARY OF THE ARGUMENT

Defendant PHH Mortgage Corporation ("PHH") has moved the Court for judgment as a matter of law or, in the alternative, a grant of a new trial conditioned on remittitur of the excessively high damages awards—$1,000,000 for emotional distress damages, $575 for other out-of-pocket loss, $350,000 for attorneys' fees, and $20,000,000 in punitive damages—rendered by the jury on March 21, 2011.  This verdict is unsupported by either the facts or the law.  As to the facts, the evidence at trial established, at most, that PHH initially misapplied two of Plaintiff's mortgage payments—the first in May 2009, the second in October 2009; that, in connection with the misapplied May payment, PHH failed to respond to Plaintiff's qualified written request ("QWR"); that, in November 2009, PHH reported Plaintiff's account as delinquent to the credit reporting bureaus before the expiration of the 60-day period set by the Real Estate Settlement Procedures Act ("RESPA") for investigating customer inquiries; and that, in January 2010, PHH responded to Plaintiff's QWR one day after the period for acknowledging such requests under RESPA (if holidays need to be counted).  Despite these ministerial lapses, it is undisputed that PHH correctly applied Plaintiff's mortgage payments for 16 consecutive months, even though Plaintiff's military allotment form, which authorized automatic deductions from his pay, did not identify the correct loan account number.  Plaintiff was never charged a late fee for the misapplied payments, and PHH promptly issued retractions of the delinquency report on November 24 and December 22, 2009.

As to the law, many independent grounds exist for reversing the jury's verdict.  *First*, Plaintiff's negligence claim fails because it is barred by contract, is not cognizable because Georgia does not authorize recovery for mere negligent infliction of emotional distress, lacks evidentiary support to establish the essential elements under Georgia law, and is preempted by the Fair Credit Reporting Act ("FCRA").  *Second*, the award of emotional distress damages

based on either the RESPA or negligence claims fails as a matter of law, and, in any event, the exorbitant amount of the award is not supported by the evidence. *Third*, even if punitive damages were available under the legal theories advanced by Plaintiff (which they are not), there was no evidence presented at trial to support an award of any punitive damages, much less an amount in excess of Georgia's statutory cap of $250,000. Certainly, the magnitude of the jury award contravenes the overwhelming weight of the evidence presented at trial. The excessive nature of the punitive damage award deprives PHH of constitutional due process under bedrock Supreme Court precedent. Here, there was no evidence to establish the so-called "reprehensibility" factors, the ratio between the amount of punitive damages and compensatory damages was grossly disproportionate, and the amount of the award far exceeds the amount of comparable civil penalties.

For each and all of these numerous, independent reasons, PHH respectfully requests that this Court award PHH judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) or, at a minimum, order a new trial under Federal Rule of Civil Procedure 59 or a remittitur of the damage award.

## ARGUMENT AND CITATION OF AUTHORITY

Under Fed. R. Civ. P. 50(b), the Court may grant a motion for judgment as a matter of law if there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. *Bogle v. Orange County Bd. of Cnty. Com'rs*, 162 F.3d 653, 656 (11th Cir. 1998). Judgment as a matter of law must be granted when there can be but one reasonable conclusion as to the verdict. *Bryan v. James E. Holmes Reg'l Med. Ctr.*, 33 F.3d 1318, 1333 (11th Cir. 1994); *Smith v. U.S.*, 894 F.2d 1549, 1552 (11th Cir. 1990) (noting that the court should enter judgment as a matter of law if the nonmoving party failed to satisfy an essential element of his case).

Under Fed. R. Civ. P. 59, the Court may grant PHH a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  A principal reason for a new trial under Rule 59 is that "the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice."  *Ins. Co. of N. Am. V. Valente*, 933 F.2d 921, 922–23 (11th Cir. 1991) (internal quotation marks omitted).  In considering a motion for new trial, the Court can reweigh the evidence and does not have to view it in the light most favorable to the verdict.  *Ard v. Sw. Forest Indus.*, 849 F.2d 517, 520 (11th Cir. 1988).  As the judicial body with a ring-side view of the evidence, the Court has significant discretion.  *Neal v. Toyota Motor Corp.*, 823 F. Supp. 939, 942 (N.D. Ga. 1993).  While the verdict must be "against the great—not merely the greater—weight of the evidence," a court is free to, and may even be compelled to, grant a new trial though substantial evidence supports the jury's verdict.  *Id.* at 923 (internal quotation marks omitted).  A verdict may run counter to the great weight of the evidence if "reasonable people, in the exercise of impartial judgment, might reach differing conclusions" as to the appropriate resolution of the dispute.  *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1289-90 (11th Cir. 2002) (internal quotation marks omitted).

I.      **Plaintiff's Negligence Claim Is Not Cognizable.**

   A.      **Plaintiff's Negligence Claim Fails Because There Is No Evidence Of A Pecuniary Loss Resulting From A Non-Physical Injury.**

The Georgia Supreme Court has expressly declined "to adopt any rule which might, in effect, create a separate tort allowing recovery of damages for the negligent infliction of emotional distress."  *See Lee v. State Farm Mut. Ins. Co*., 533 S.E.2d 82, 86 (Ga. 2000).  As the Georgia decisions make clear, for emotional distress to qualify as an element of recoverable damages in a negligence action, the distress must be caused by and flow from a requisite antecedent injury.  *"[B]efore damages for mental pain and suffering are allowable*, there must

- 3 -

also be an actual physical injury to the person, *or a pecuniary loss resulting from an injury to the person which is not physical*; such an injury to a person's reputation, or the mental pain and suffering must cause a physical injury to the person." *Nationwide Mut. Fire Ins. Co. v. Lam*, 546 S.E.2d 283, 285 (Ga. Ct. App. 2001) (emphasis added); *OB-GYN Assoc. of Albany v. Littleton*, 386 S.E.2d 146, 149 (Ga. 1989) ("[F]or a pecuniary loss to support a claim for damages for emotional distress, the pecuniary loss must occur as a result of a tort involving an injury to the person even though this injury might not be physical."). Were it otherwise, plaintiffs would be able to fashion a cause of action for the merely negligent infliction of emotional distress, which the Georgia Supreme Court has steadfastly refused to recognize. *See Lee*, 533 S.E.2d at 86.

Although Plaintiff's counsel contended that the $575 subscription payments for credit monitoring represented pecuniary loss resulting from PHH's alleged negligence (*see* 2/3/2011 Pretrial Tr. 8 (Ex. A)), the record shows otherwise. The jury expressly found PHH liable on Plaintiff's contract claim. Emotional distress damages cannot support a verdict for breach of contract, which, instead, requires an identifiable economic loss. *Graphics Prods. Distrib., Inc. v. MPL Leasing Corp.*, 317 S.E.2d 623, 624 (Ga. Ct. App. 1984). Where Plaintiff proved no economic loss aside from the $575 fee, where the Court specifically instructed the jury to specify damages for breach of contract in the "Other Compensatory Damages" category of the special verdict form (*see* 3/18/2011 Trial Tr. 199 (Ex. B)), where the jury found liability for breach of contract and indeed assigned the $575 "loss" to "Other Compensatory Damages," the jury must have attributed the $575 expense to breach of contract, not to negligence. Nor may Plaintiff recover the $575 credit monitoring expense as an element of both contract and negligence damages, given that a defendant's tort liability cannot be based on obligations arising solely by contract. *See infra* § I.C. The record therefore fails to show any negligently caused injury at all.

In any event, Plaintiff failed to demonstrate the necessary causal connection linking his subscription to the credit monitoring service to any asserted negligence claim.  Although Plaintiff's counsel argued that Plaintiff's negligence claim was predicated on the denial of the credit card and the expense of the credit monitoring service (*see* (Ex. A) 2/3/2011 Pretrial Tr. 8), he admitted that Plaintiff did not subscribe to a credit monitoring service until January 2010 (*id.* at 54-55).  By that date, PHH had sent two letters to credit bureaus—one dated November 24 and another dated December 22—retracting the delinquency that PHH had reported regarding Plaintiff's account.  Each time, PHH informed Plaintiff that these retractions had been sent.  Thus, any expenses Plaintiff incurred due to his subsequent and unilateral election to subscribe to a credit monitoring service cannot reasonably represent a "pecuniary loss resulting from an injury to the person which is not physical" caused by PHH's negligence.  *Lam*, 546 S.E.2d at 285.

Likewise, the evidence was insufficient to permit a reasonable juror to find any causal link between PHH reporting Plaintiff's account as delinquent and the denial of his credit card application made jointly with his wife.  The CB&T representative who testified at trial confirmed that he did not know whether the credit card was denied based on Plaintiff's credit score or that of his wife.  ((Ex. C) 3/17/2011 Trial Tr. 58-60.)  When considering a joint application, CB&T's practice is to rely on the *higher* credit score of the two applicants (*id.* at 54, 63), and Plaintiff's wife testified her credit score was higher than Plaintiff's.  (*Id.* at 66-67, 76-77.)  What is more, the CB&T witness testified that the application could have been denied for any one of numerous reasons, including a delinquency, the length of time accounts had been established, or because the amount of time since a delinquency was reported was recent or unknown.  (*Id.* at 59.)  And there was no evidence or testimony presented by a representative of Visa, which had the ultimate say on the application, to explain why the joint application was denied.  Simply put, there was no

showing that the application would have been granted but for the delinquency that PHH reported to the credit bureaus.  *See Broadfoot v. Aaron Rents, Inc.*, 409 S.E.2d 870, 874 (Ga. Ct. App. 1991) (no reputational injury as a matter of law where denial of credit could have been based on any one of equally plausible alternative explanations).

Even if the evidence had established reputational harm resulting in pecuniary loss, Plaintiff's emotional distress *preceded* that predicate injury.  As just noted, it was not until January 2010 (if ever) that Plaintiff sustained both reputational injury and pecuniary loss to support an award of emotional distress damages under a negligence theory.  Yet the jury was allowed to award Plaintiff damages for emotional distress he allegedly suffered in May, June, October, and through December 2009—*i.e.*, before there was any evidence of a predicate injury that would entitle him to such an award.  (*See, e.g.*, (Ex. C) 3/17/2011 Trial Tr. 166.)  By January 2010 all payments had been properly allocated, the erroneous November 5, 2009 late payment report had been retracted, PHH had apologized for its errors, and Plaintiff had received a letter from PHH specifically advising him to put creditors in touch with PHH if he experienced any problems.  There was simply no basis for any emotional distress award by the time Plaintiff voluntarily paid for the credit monitoring service.[1]

### B.      Plaintiff's Negligence Claim Is Preempted By FCRA.

FCRA sets forth the obligations and responsibilities of those, like PHH, who furnish

---

[1] Any suggestion that the jury awarded emotional distress damages on the basis of intentional conduct fails as a matter of law.  The tort of intentional infliction of emotional distress requires conduct that is "directed toward the plaintiff," *Ryckeley v. Callaway*, 412 S.E.2d 826, 827 (Ga. 1992), and "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Jarrard v. United Parcel Serv., Inc.*, 529 S.E.2d 144, 146-47 (Ga. Ct. App. 2000).  Given this standard, no reasonable juror could have found PHH liable for intentional infliction, even if Plaintiff had asserted such a claim and the jury had been instructed on its elements (neither of which occurred).  *See Travis Pruitt & Assocs., P.C. v. Hooper*, 625 S.E.2d 445, 450 (Ga. Ct. App. 2005) (rejecting argument that plaintiff could recover for intentional infliction of emotion distress where "all the claims against [defendant] in the complaint plainly assert that [defendant] was negligent").

information to credit reporting agencies.  *See* 15 U.S.C. § 1681s-2(a)(2); *Campbell v. Chase Manhattan Bank, USA, N.A.,*, No. Civ.A. 02-3489 (JWB) 2005 WL 1514221, at *16 (D.N.J. June 27, 2005).  But FCRA expressly preempts any "requirement or prohibition . . . imposed under the laws of any State … with respect to any subject matter regulated under … [15 U.S.C. §] 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies[.]"  *See* 15 U.S.C. § 1681t(b)(1)(F).  Here, Plaintiff's negligence claim arises from PHH's act of reporting to the credit bureaus a delinquency in his account relating to his October mortgage payment.  (*See, e.g.*, (Ex. D)  3/16/2011 Trial Tr. 11.)  FCRA preempts such claims.[2]  It is irrelevant that Plaintiff chose not to allege a FCRA violation in his complaint, when his claims self-evidently implicate the duties of a furnisher of credit information under the statute.  *See Burrell v. DFS Servs., LLC*, Civ. No. 10-2706 (DRD), 2011 WL 831923, at *6 (D.N.J. Mar. 3, 2011) ("That [plaintiff] chose not to invoke the FCRA against [furnisher of information] in his Amended Complaint is of no moment. Preemption is not limited to conflicts between federal and state law set forth in a pleading document; it is rooted in Congress's ability to limit state authority to regulate areas of conduct in the first place.").

Plaintiff's claim is not saved by 15 U.S.C. § 1681h(e), limiting liability for certain types of conduct otherwise subject to the statute's provisions.  PHH's actions with respect to the reporting of Plaintiff's delinquency to the credit bureaus, an activity regulated by § 1681s-2(a)(2),

---

[2] PHH acknowledges a split authority regarding the scope of the express preemption provision of § 1681t(b)(1)(F).  Some courts have held that the scope of preemption encompasses only state statutory claims, not claims for common law negligence or other non-statutory duties.  *See, e.g., Johnson v. CitiMortgage, Inc.*, 351 F. Supp. 2d 1368, 1374-76 (N.D. Ga. 2004).  Other courts have held that the provision preempts all state law claims, including negligence claims seeking to impose duties on furnishers of information.  *See, e.g., Cosmas v. Am. Exp. Centurion Bank*, No. 07-6099, 2010 WL 4961641, at *8-9 (D.N.J. Dec. 1, 2010) (slip copy); *Carruthers v. Am. Honda Fin. Corp.*, 717 F. Supp. 2d 1251, 1257-58 (N.D. Fla. 2010); *Knudson v. Wachovia Bank*, 513 F. Supp. 2d 1255, 1260-61 (M.D. Ala. 2007).  PHH respectfully submits that the reasoning of these latter decisions is more persuasive and should be followed here.

does not fit within any of the matters addressed in § 1681h(e).  *Knudson*, 513 F. Supp. 2d at 1259-60.  Furthermore, even if § 1681h(e) applied, Plaintiff's claim would still be barred because the record fails to show that PHH acted with malice or willful intent directed towards Plaintiff.  *See infra* § III.C.

<p style="text-align:center"><b>C. Plaintiff's Negligence Claim Is Barred By Contract.</b></p>

Under Georgia law, a party may not assert negligence if the only duty allegedly breached is one created by contract.  *See Sheppard v. Yara Eng'g Corp.*, 281 S.E.2d 586, 587 (Ga. 1981).  Rather, "to constitute a tort the duty must arise independent of contract."  *Id*.  Because the only duties that PHH allegedly breached are the contractual obligations arising from the note representing Plaintiff's mortgage, his negligence claim fails as a matter of law.  *See Fielbon Dev. Co, LLC v. Colony Bank of Houston Cnty.*, 660 S.E.2d 801, 808 (Ga. Ct. App. 2008).  In *Fielbon*, the court of appeals held that the trial court erred in failing to direct a verdict on a borrower's counterclaims for negligence, attorneys' fees, and punitive damages because "[t]he negligent actions or inactions that [borrower] asserts against [lender] all arise out of the bank's administration of its construction loan."  In so holding, the court recognized the well-established rule that "[a]bsent a legal duty beyond the contract, no action in tort may lie upon an alleged breach of [a] contractual duty."  *See id*. (internal citation omitted); *see also Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 693 (7th Cir. 2011) (affirming dismissal of negligence claim because "each duty that the plaintiffs identify has its root in the note-and-mortgage contract itself"); *Sarsfield v. CitiMortgage, Inc.*, 707 F. Supp. 2d 546, 554 (M.D. Pa. 2010) (plaintiff's negligence claims based on alleged breaches of RESPA duties and "a more generalized tort duty to use reasonable care in servicing the mortgage" were barred by contract; "[a]bsent [the mortgage] contract—a federally related mortgage loan—the parties would not have had a relationship and Defendant's obligations under RESPA would never have materialized").  Even

<p style="text-align:center">- 8 -</p>

if PHH's RESPA duties exceed or differ from obligations created by the note and mortgage

contract, Plaintiff would still be left without a negligence claim.  *See Castaneda v. Saxon Mortg.*

*Servs.*, 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009) (granting summary judgment on negligence

claim, but allowing RESPA claim to proceed because "[a]bsent special circumstances a loan

transaction is at arms-length and no duties arise from the loan transaction outside of those in the

agreement" (internal citations and quotation marks omitted)).  Either way, PHH is entitled to

judgment as a matter of law on Plaintiff's negligence claim for this reason as well.

> **D.     Plaintiff's Negligence Claim Fails Because There Is No Evidence Of The Ordinary Standard Of Care In PHH's Industry.**

In Georgia, to maintain a negligence claim based on a defendant's alleged failure to meet

the standard of care within a given profession, a plaintiff must first present expert testimony to

establish the ordinary standard of care within that particular profession.  *See, e.g.*, *Minnix v.*

*Dep't of Transp.*, 533 S.E.2d 75, 80 (Ga. 2000); *Munford, Inc. v. Munford*, 188 B.R. 860, 865

(N.D. Ga. 1994) (recognizing that "expert testimony is necessary to establish the parameters of

acceptable professional conduct").  Because Plaintiff offered no such evidence, PHH is entitled

to judgment as a matter of law on Plaintiff's negligence claim.

## II.     The Emotional Distress Damages Are Unsupported By Fact And Law.

The jury was instructed that it could award Plaintiff damages for emotional distress both

for violations of RESPA and on his negligence claim as compensation for a single injury.

Plaintiff's counsel conceded that the damages Plaintiff sought on his negligence and RESPA

claims were one and the same.  (*See* (Ex. B) 3/18/2011 Trial Tr. 19; *see also* (Ex. A) 2/3/2011

Pretrial Tr. 11.)  Plaintiff sought damages for emotional distress allegedly suffered in May, June,

October, and November 2009.  The evidence is insufficient to support an award of damages for

emotional distress during these months, and in any event the $1 million verdict grossly exceeds

the amount authorized by the evidence.

*First*, Plaintiff's proof fell short of what he needed to recover emotional distress damages for negligence.  As already noted, he failed to show that he suffered a pecuniary loss resulting from a non-physical personal injury before January 2010 (if at all).  Even if reputational injury alone sufficed to support emotional distress damages, assuming Plaintiff suffered such injury, he did so in November, 2010, at the earliest, in connection with Visa's denial of Plaintiff's joint credit card application with his wife.  But the bank officer's highly ambiguous, equivocal testimony leaves the reason for the denial far from clear—particularly where CB&T merely served as a conduit for Visa, the actual decisionmaker, no representative of which testified.

*Second*, the evidence here failed to show any causal connection between the alleged RESPA violations and any emotional distress Plaintiff reasonably may have suffered.  Plaintiff alleged that PHH violated RESPA by failing to confirm receipt of the June 22, 2009, QWR within 20 days, *see* 12 U.S.C. § 2605(e)(1)(A), or to provide a written explanation within 60 days, *see* 12 U.S.C. § 2605(e)(2)(C).  But by June 30—well before PHH was obligated to confirm receipt and thus before any alleged breach even arguably occurred—the "missing" May payment already had been correctly applied to Plaintiff's account at no expense to him, thereby resolving his complaint.  Since his payments were correctly applied for the next three months, there was no basis for emotional distress by the time of the asserted RESPA violations relating to the May/June events.  Any distress the jury may have considered in awarding damages for those events preceded any violations, which, therefore, could not have caused it.  The same is true with respect to PHH's allegedly tardy response to the October 23, 2009 QWR.  As for emotional distress asserted in regard to the November 5 credit bureau report and the Visa credit card denial, whatever aggravation Plaintiff suffered briefly in November 2009 by no means warrants a six-

figure award in light of evidence that: (1) PHH issued two retractions of the November report, the first less than three weeks after the erroneous credit report; (2) PHH apologized for its mistake on December 22 and had offered assistance with any further credit difficulties; (3) Plaintiff had no reason to fear any repercussions with the military; (4) he testified that he did not need another credit card; and (5) he never sought credit following PHH's retraction and did not even use the only credit card he owns.  ((Ex. C) 3/17/2011 Trial Tr. 46-48, 116-17, 120, 162-66, 168-69, 170-71, 186-89; (Ex. B) 3/18/2011 Trial Tr. 82-83.)  *See, e.g., Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231,1241 (11th Cir. 2007) (granting judgment as a matter of law where the evidence failed to establish a connection between the conduct at issue and the claimed damages because there was "no legally sufficient evidentiary basis for a reasonable jury to find for [plaintiff] on the issue of damages").

*Third*, the jury was instructed that it could award emotional distress damages arising out of the same conduct alleged to have violated both RESPA and PHH's alleged duty of reasonable care (*see* Jury Charge No. 9, (Ex. B) 3/18/2011 Trial Tr. 197), creating a substantial risk of double recovery.  As already noted, the sole breach of any duty that could have possibly caused Plaintiff reputational harm coupled with pecuniary loss is the November 5, 2009, delinquency report to the credit bureaus.  Indeed, Plaintiff's counsel characterized the negligence claim the same way.  ((Ex. A) 2/3/2011 Pretrial Tr. 8 ("What we've got here is they intentionally sent a negative report to the credit bureaus that damaged David's credit reputation . . . .").)  PHH has conceded that its report violated the RESPA prohibition against furnishing adverse credit information during the 60-period for investigating customer complaints.  Since his RESPA and alleged negligence claims entirely overlapped as to any injury resulting from the November 5 report, it is highly likely that the excessive compensatory award for emotional distress represents

a double recovery for the breach of a single statutory duty. *See Sanders v. Brown*, 343 S.E.2d 722, 727-28 (Ga. Ct. App. 1986).

*Fourth*, to the extent Plaintiff was entitled to some award of emotional distress damages, the amount of his award is not supported by the evidence.   Fed. R. Civ. P. 59 authorizes the Court to award a new trial if a verdict contradicts the clear weight of the evidence.  "When considering a motion for a new trial, the Court may reweigh the evidence; it may set aside a verdict because it is against the clear weight of evidence, the damages are excessive or substantial trial errors have occurred." *See Neal*, 823 F. Supp. at 942.  The court should reduce the jury's verdict to the maximum amount supported by the evidence. *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1448 (11th Cir. 1985).  "If the Court determines, however, that the excessive verdict was the result of bias, passion or prejudice, the Court cannot order a remittitur—it may only order a new trial." *Neal*, 823 F. Supp. at 942 (internal citation omitted).

Plaintiff's only evidence of emotional distress was his testimony, corroborated by his wife, that he had trouble sleeping and for a short time worried that he might lose his Ranger position if his military supervisors learned of a delinquency on his mortgage account.  There is no evidence, however, that Plaintiff ever suffered any adverse employment consequences—that he received a reassignment, a poor performance review, or any other indication that anyone within the military viewed his credit problems with disfavor.  Nor did Plaintiff seek any medical treatment or counseling, or incur any other out-of-pocket costs in connection with his purported emotional distress.  He was even heard mocking his emotional distress claim in an audiotape played at trial.  ((Ex. C) 3/17/2011 Trial Tr. 159-60.)  Yet the jury gave him $1 million for his distress—an amount 25,000 times greater than the $40 late fees that PHH *waived*, more than 1,700 times greater than the cost of his voluntary credit monitoring subscription, nearly 800

times greater than his $1,300 monthly mortgage payment, and six times greater than his $161,350 mortgage.  The award here is sufficiently exorbitant to "warrant a finding that the jury's verdict was swayed by passion and prejudice."  *See Christopher v. Florida*, 449 F.3d 1360, 1368 (11th Cir. 2006).

Under these circumstances, the entire verdict should be overturned and a new trial ordered as to all issues.  *See Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1446–47 (11th Cir. 1991).  Alternatively, the Court should order a remittitur "reducing [the] jury's award to the outer limit of the proof."  *Goldstein*, 758 F.2d at 1448; *see also Warren v. Ford Motor Credit Co.*, 693 F.2d 1373, 1380 (11th Cir. 1982).[3]

## III.  The Punitive Damages Awarded Against PHH Fail As A Matter Of Law.

### A.  Georgia Law Prohibits Simultaneous Awards For Emotional Distress And Punitive Damages Here.

"In a tort action in which the entire injury is to the peace, happiness, or feelings of the plaintiff, no measure of damages can be prescribed except the enlightened consciences of impartial jurors. In such an action, *punitive damages under Code Section 51-12-5 or Code Section 51-12-5.1 shall not be awarded*."  O.C.G.A. § 51-12-6 (emphasis added); *see also Westview Cemetery, Inc. v. Blanchard*, 216 S.E.2d 776, 780 (Ga. 1975).  Damages for emotional distress are quintessentially those that seek recovery for an injury to the "'peace, happiness, or feelings of the plaintiff.'"  *Reeves v. Edge*, 484 S.E.2d 498, 503 (Ga. Ct. App. 1997);  *Waldrip v. Voyles*, 411 S.E.2d 765, 768 (Ga. Ct. App. 1991) (absent evidence of physical injury or

---

[3] Because the damages awarded were grossly excessive and unsupported by the evidence and because the jury was allowed to consider evidence of an attorneys' fee arrangement contingent on the damages awarded, the fee award itself should be set aside.  Moreover, because bad faith under O.C.G.A. § 13-6-11 relates to the transaction giving rise to the cause of action, not to the manner in which the case is defended, *see, e.g., Holbrook v. Stansell*, 562 S.E.2d 731, 734 (Ga. Ct. App. 2002), the fee award cannot be sustained based on evidence that PHH "blamed" Plaintiff by exercising its right to assert defenses in this litigation.  ((Ex. C) 3/17/2011 Trial Tr. 74, 196; (Ex. B) 3/18/2011 Trial Tr. 32, 114-15, 161.)

pecuniary loss, plaintiff's remedy was limited to the compensatory award for mental anguish and emotional distress). Thus, Georgia law bars Plaintiff from recovering both emotional distress and punitive damages.

> **B.      There Is No Evidence To Support The Award Of Punitive Damages Under Georgia Law.**

Because Plaintiff's claim for negligence is neither cognizable under Georgia law nor supported by the evidence, as shown above, there is no tort upon which an award of punitive damages could be based. Unless entitled to compensatory damages for a tort claim, a litigant may not recover punitive damages. *Jenkins v. Gen. Hosps. of Humana, Inc.*, 395 S.E.2d 396 (Ga. Ct. App. 1990); *Glynn County Fed. Emp. Credit Union v. Peagler*, 348 S.E.2d 628 (Ga. 1986). Punitive damages are not allowed for RESPA violations or for breach of contract claims. *See, e.g.*, *Sarsfield v. CitiMortgage, Inc.*, 667 F. Supp. 2d 461, 470 (M.D. Pa. 2009); O.C.G.A. § 13-6-10. Accordingly, the punitive award must be vacated.

Even if Plaintiff's negligence claim were valid, his evidence failed to meet the standard for recovering punitive damages. Georgia law requires a finding by clear and convincing evidence that the defendant's actions demonstrated "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b); *see also Wardlaw v. Ivey*, 676 S.E.2d 858, 861 (Ga. Ct. App. 2009). "Negligence alone, even gross negligence, will not support an award of punitive damages." *Hutcherson v. Progressive Corp.*, 984 F.2d 1152, 1155 (11th Cir. 1993); *Colonial Pipeline Co. v. Brown*, 365 S.E.2d 827, 830 (Ga. 1988). "There must be circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton." *Cullen v. Novak*, 411 S.E.2d 331,

332 (Ga. Ct. App. 1991); *see also Wardlaw*, 676 S.E.2d at 861 (defining "wanton conduct" as that "which is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit [of] actual intent"). "[C]onscious indifference to consequences means an intentional disregard of the rights of another, knowingly or wilfully." *Comcast Corp. v. Warren*, 650 S.E.2d 307, 311 (Ga. Ct. App. 2007); *Read v. Benedict*, 406 S.E.2d 488, 491 (Ga. Ct. App. 1991). Because the evidence at trial wholly failed to meet that strict standard, the award of punitive damages must be vacated in its entirety. *See, e.g.*, *MDC Blackshear, LLC v. Littell*, 537 S.E.2d 356, 361 (Ga. 2000) (reversing with direction that punitive damages award be written off where evidence showed that defendant was merely negligent); *Evans v. Willis*, 441 S.E.2d 770, 773 (Ga. Ct. App. 1994) (same).

Though perhaps not as promptly as Plaintiff preferred, PHH undertook reasonably prompt efforts to correct the errors that resulted in the misallocation of Plaintiff's mortgage payments. For the first sixteen months that Plaintiff's payments were deducted pursuant to his military allotment form, PHH correctly applied Plaintiff's payments without any request or involvement by Plaintiff whatsoever, even though his allotment form failed to identify the correct loan account number. ((Ex. B) 3/18/2011 Trial Tr. 40-41, 45-48, 53-54, 61-64, 69, 85-87.) When Plaintiff's payment was applied to the wrong loan account for the first time in May 2009, PHH's cash management department discovered the error and attempted to rectify it by reversing the payment and applying to the correct account. (*Id*. at 62-63.) The error persisted, however, and even though Plaintiff received late payment notices in May and June 2009, PHH again researched the issued, identified the misapplied payment, and credited the proper account on June 30, 2009. (*Id*. at 63-64, 70-72.) PHH admitted its mistake, and Plaintiff was not charged any late payment fees, nor was his delinquency reported to any credit bureau. (*Id*. at 74.)

Further, when Plaintiff's October 2009 payment was inadvertently reported to the credit bureaus as delinquent, PHH promptly apologized, issued a credit retraction on November 24, 2009, and, as a matter of precaution, issued a further retraction on December 22, 2009.  (*Id*. at 83-84.)

Where a defendant takes such affirmative steps to avoid or correct errors, even if those steps are later found to be negligent, an award for punitive damages fails as a matter of law because the defendant does not act with wanton disregard.  *See, e.g.*, *Hutcherson*, 984 F.2d at 1155-56 (trucking company could not be liable for punitive damages as a matter of law for negligent hiring where company made some efforts to investigate employee's background); *MDC Blackshear*, 537 S.E.2d at 361 (evidence did not support award of punitive damages where defendant "engaged in due diligence" to ascertain the merit of plaintiff's claim); *Kodadek v. Lieberman*, 545 S.E.2d 25, 29-30 (Ga. Ct. App. 2001) (no punitive damages where patient was immediately informed of the error occurring in operating room).  In light of PHH's repeated efforts to apply Plaintiff's payments correctly and to retract the erroneous delinquency reports, there was no willful or wanton conduct that merits punishment or deterrence.

The evidence at trial showed nothing more than that PHH mistakenly failed to credit Plaintiff's payments to the proper account, resulting (in only one of two instances) in an inadvertent report of delinquency to the credit bureaus.  Georgia law is clear that conduct of that kind cannot support an award of punitive damages.  *See Evans*, 441 S.E.2d at 773 (1994) (evidence failed to show dry cleaner's "loss of the wedding dress was anything other than the result of Evans' negligence").  Even a lender's "negligent breach[ ] of the duties owed as grantee under the deeds to secure debt" that results in a wrongful foreclosure of property—which did not occur here—is insufficient for punitive damages.  *See Tower Fin. Servs., Inc. v. Smith*, 423 S.E.2d 257, 264 (Ga. Ct. App. 1992) (affirming grant of partial summary judgment on claim for

punitive damages even where defendants "conducted the foreclosure in a careless and negligent manner").  At the very least, PHH's affirmative efforts to rectify the problems create a conflict in the evidence that precludes a finding of wanton misconduct or conscious disregard by clear and convincing evidence, as the statute requires.  *See Hutcherson*, 984 F.2d at 1156; *Kodadek*, 545 S.E.2d at 29.

It is the nature of the defendant's acts, rather than the perception of those acts by the person harmed, that determines whether punitive damages are authorized.  *T.G. & Y. Stores Co. v. Waters*, 334 S.E.2d 910, 913 (Ga. Ct. App. 1985).  Accordingly, evidence that a defendant is indifferent or unsympathetic to the plight of a plaintiff is insufficient to support an award of punitive damages.  *Evans*, 441 S.E.2d at 773; *Cmty. Fed. Sav. & Loan Ass'n v. Foster Developers, Inc.*, 348 S.E.2d 326 (Ga. Ct. App. 1986).  It is also completely irrelevant to the issue of punitive damages that, as part of its defense in litigation, PHH argued that Plaintiff himself bore some responsibility for incorrectly filling out his military allotment form.   (And, as explained below, Plaintiff's counsel's explicit request that the jury punish PHH for its lawful defense of his claims constitutes an independent violation of due process.)  Viewed objectively, from the standpoint of the evidence at trial and the actual conduct of PHH, the lack of "circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant," *Cullen*, 411 S.E.2d at 332, demands that the punitive damages verdict be vacated in its entirety.

### C.   Georgia's Cap Of $250,000 On Punitive Damages Applies Because There Is No Evidence Of Specific Intent To Harm.

Even assuming the evidence permitted an award of punitive damages in some amount, there was insufficient evidence by which the jury could find specific intent to harm warranting an award in excess of the $250,000 statutory cap.  *See* O.C.G.A. § 51-12-5.1(f), (g).  Georgia

courts look to the Restatement (Second) of Torts § 8A to define "intent" in determining whether a defendant has acted with a specific intent to cause harm. *Action Marine, Inc. v. Cont'l Carbon, Inc.*, 481 F.3d 1302, 1313 (11th Cir. 2007); *Viau v. Fred Dean, Inc.*, 418 S.E.2d 604, 608 (Ga. Ct. App. 1992). The Restatement defines "intent" to mean "'that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.'" *Viau*, 418 S.E.2d at 608 (quoting Restatement). "On the other hand, the mere knowledge and appreciation of a risk, short of a substantial certainty, is not the equivalent of intent." *Id.*; *see also J.B. Hunt Transport, Inc. v. Bentley*, 427 S.E.2d 499, 504 (Ga. Ct. App. 1992). Nor is specific intent to cause harm established merely by a showing of conscious indifference. *Tookes v. Murray*, 678 S.E.2d 209, 213 (Ga. Ct. App. 2009).

As in *Viau*, *J.B. Hunt*, and *Tookes*, there is no evidence here that PHH acted with specific intent to cause harm to Plaintiff or anyone else. At the conclusion of trial, Plaintiff's counsel argued that PHH "intentionally saw to it that the people in India—the people that you're told to talk to—do not have the information to straighten out your situation." ((Ex. B) 3/18/2011 Trial Tr. 154.) The purpose of this alleged "scheme," according to Plaintiff's counsel, was to deceive borrowers into paying late fees or an extra mortgage payment. (*Id.* at 42-43.) Yet the evidence is undisputed that Plaintiff was not charged and did not pay any late fees for his two misapplied payments, nor was he ever required to make an extra mortgage payment. More to the point, there is no evidence that any PHH customer has ever paid a late fee or extra mortgage payment as a result of a call center employee's inability to handle a customer's complaint, and specifically a complaint regarding military allotment forms. Military allotment payments represent a small fraction of the payments PHH receives (*id.* at 46, 89), and PHH's representative testified that the two military allotment payments that were misapplied here as a result of an incorrect loan

number were the only two she had seen with respect to a military allotment in her 20-year career. (*Id.* at 87.)  Plaintiff introduced no evidence, whether from a PHH representative or industry expert, on the likelihood that a "scheme" of the sort alleged by Plaintiff would result in the erroneous payments of late fees or mortgage payments.  Nor did he present any evidence that any employee of PHH harbored such intent.  In short, there is a complete absence of evidence, direct or circumstantial, that PHH "desire[d] to cause [the] consequence[ ]" of a late fee or extra mortgage payment, or that PHH "believe[d] that the consequences [were] substantially certain to result from it."  *Viau*, 418 S.E.2d at 608.[4]

### D.      RESPA Preempts An Award Of Punitive Damages.

To the extent that the purported duty that PHH allegedly breached is one created by RESPA, damages under RESPA are limited to a plaintiff's actual damages and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000."  12 U.S.C. § 2605(f)(1).  Thus, to the extent that damages in addition to actual damages are recoverable for a RESPA violation, such damages cannot exceed $1,000.  Notably, RESPA does not provide for punitive damages. *Sarsfield v. CitiMortgage*, Inc., 667 F. Supp. 2d 461, 470 (M.D. Pa. 2009).  And, RESPA preempts state law to the extent that state law is inconsistent with its provisions.  *See* 12 U.S.C. § 2616.

Awarding punitive damages in excess of $1,000 under state law for a violation of duty created by RESPA would be inconsistent with RESPA's limitation on the amount of damages that can be awarded in addition to actual damages.  *Cf. Moreno v. Consol. Rail Corp.*, 99 F.3d

---

[4] Plaintiff may argue that his failure to adduce evidence of substantial certainty is irrelevant because late fees and extra mortgage payments are a "natural and probable consequence."  But that argument has been "explicitly reject[ed]" by the Georgia courts.  *See J.B. Hunt*, 427 S.E.2d at 504.

782, 791 (6th Cir. 1996) ("It would be highly anomalous to let a plaintiff asserting an implied

right of action under § 504 [of the Rehabilitation Act] recover more in punitive damages than

could be recovered by a plaintiff asserting the statutory remedy created for § 501."); *Long v.*

*Trans World Airlines, Inc.*, 704 F. Supp. 847, 856 (N.D. Ill. 1989) ("Recovery of punitive

damages is an unusual remedy which is not be to be provided without clear intent to create such

a remedy.").  Moreover, as a matter of law, alleging only two violations of RESPA does not form

a pattern or practice.  *McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1365 (S.D. Fla.

2009).  Accordingly, because Plaintiff's award of punitive damages rests ultimately on duties

imposed by RESPA or otherwise governed by contract, the award must be vacated.

      **E.**      **The Punitive Damage Award Violates Due Process.**

      Plaintiff's $20 million punitive damages award violates due process.  The United States

Supreme Court repeatedly has held that the federal constitutional guarantee of due process places

procedural and substantive limits on punitive damages.  *See, e.g.*, *State Farm Mut. Auto Ins. Co.*

*v. Campbell*, 538 U.S. 408, 423 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-75

(1996).  Moreover, due process prohibits even an "unreasonable and unnecessary risk" that the

jury will punish the defendant based on impermissible factors.  *Philip Morris USA v. Williams*,

549 U.S. 346, 357 (2007).  Here, the punitive award is  unconstitutional because it rests on

impermissible considerations and is excessive.

      **1.**      **The Punitive Damages Award Was Based On Improper**
                            **Considerations.**

      "A defendant's dissimilar acts, independent from the acts upon which liability was

premised, may not serve as the basis for punitive damages."  *State Farm*, 538 U.S. at 422-23.

Rather, the jury may consider only the "conduct that harmed the plaintiff" and "conduct [that]

replicates the prior transgression."  *Id*. at 423; *see also Williams*, 549 U.S. at 353 ("Due Process

Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties.").  Here, the punitive-damages award was substantially based on "dissimilar acts" and other impermissible considerations.

*First*, the punitive damages award violates due process because it is based on evidence of harm to non-parties.  *Williams*, 549 U.S. at 356-57.  During his closing argument, Plaintiff's counsel openly invited the jury to punish PHH not merely for the harm suffered by Plaintiff, but also for the supposed harm suffered by nameless and unidentified others: "[T]his case is bigger than David. ***This case is about other soldiers and other people that are not soldiers who could have the same problem***," because of the potential for "a late fee, an extra monthly payment, either there or yonder, from a million accounts, some percentage of a million accounts."  ((Ex. B) 3/18/2011 Trial Tr. 155, 169 (emphasis added).)  As the Supreme Court observed, "a defendant threatened with punishment for injuring a nonparty victim has no opportunity to defend against the charge, by showing, for example in a case such as this, that the other victim was not entitled to damages . . . ."  *Williams*, 549 U.S. at 353.  Plaintiff's argument also impermissibly injected a "standardless dimension to the punitive damages equation" by leaving the jury to speculate on the number of such other victims and the seriousness of their harm, thereby creating the "risks of arbitrariness, uncertainty, and lack of notice" that violates a defendant's right to "fundamental due process."  *Id*. at 354.[5]

*Second*, due process prohibits the use of evidence and argument of "dissimilar acts, independent from the acts upon which liability was premised, . . . as the basis for punitive

---

[5] To the extent Plaintiff's argument alleging harm to non-parties would necessarily include borrowers residing in other states, the argument violated due process for the separate and independent reason that the State of Georgia has no legitimate interest in punishing conduct that occurred outside the state, irrespective of whether that conduct was lawful.  *See State Farm*, 538 U.S. at 420-22 ("Nor, as a general rule, does a State have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction.").

damages." *State Farm*, 538 U.S. at 422-23.  Again, Plaintiff's counsel invited the jury to punish PHH for conduct that had nothing to do with Plaintiff's misapplied mortgage payments.  During closing argument, Plaintiff's counsel argued, "[y]ou know, you open up the paper every day and you read about how these mortgage companies cheat people."  ((Ex. B) 3/18/2011 Trial Tr. 152; *see also id.* at 155 ("A mortgage company is not allowed to cheat and ignore its customers.").) Plaintiff referred to "these 150,000 people a month" placing calls to PHH's customer service center as a sign that "[t]hey've got some serious problems," without, of course, any evidence that those calls concerned any problem, much less problems that related in any way to Plaintiff's claims.  (*Id.* at 159.)  These arguments served only the improper purpose of portraying PHH as "an unsavory . . . business."  *See State Farm*, 538 U.S. at 423.

*Third*, Plaintiff's counsel improperly invited the jury to impose punitive damages based on PHH's conduct at trial and in litigation, quite apart from PHH's conduct in the course of the transactions and occurrences underlying the complaint.  Plaintiff's counsel openly disparaged PHH for defending the case at all and repeatedly criticized PHH for "blaming David" in its answer to Plaintiff's complaint and during the course of trial itself.  (*See, e.g.*, (Ex. D) 3/16/2011 Trial Tr. 29.)  These criticisms continued throughout the trial.  (*See id.* at 37, 114-16; (Ex. C) 3/17/2011 Trial Tr. 196; (Ex. B) 3/18/2011 Trial Tr. 161.)  The only conceivable purpose for these repeated attacks on PHH's defense was the illegitimate one of inflaming the jury's passions.

Defendants have a due-process right to litigate their cases, *see United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971), which includes the right "'to present every available defense,'" *Williams*, 549 U.S. at 353 (quoting *Lindsey v. Normet*, 405 U.S. 56, 66 (1972)).  It was entirely inappropriate and clearly prejudicial for Plaintiff's counsel to urge the jury to base its verdict even in part on PHH's exercise of that right.  At the very least, PHH is entitled to a second

chance to present its side of the story, without the blatant disparagement of its constitutional right to defend itself.

### 2.     The Punitive Damages Award Is Excessive.

Under the U.S. Constitution, a defendant has a right to be free from unreasonable punishment inflicted by an excessive punitive damages award. *State Farm*, 538 U.S. at 416–17; *Gore*, 517 U.S. at 574-75. The United States Supreme Court has repeatedly held that due process places upper limits on punitive damages. *See State Farm*, 538 U.S. at 423; *Gore*, 517 U.S. at 574-75. Upon determination of the constitutional limit on a particular award, a district court may enter a judgment for that amount as a matter of law under Federal Rule of Civil Procedure 50(b). *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999). Due process forbids the imposition of excessive punitive damages, with the excessiveness of an award to be determined (1) by an application of the so-called "reprehensibility" factors, (2) by the award's ratio to the amount of compensatory damages, and (3) by a comparison to available civil and criminal penalties. *State Farm*, 538 U.S. at 418; *Kemp v. AT&T*, 393 F.3d 1354, 1362 (11th Cir. 2004).

### (a)     Reprehensibility

"'[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct.'" *State Farm*, 538 U.S. at 419 (citation omitted). In simple terms, "punitive damages may not be 'grossly out of proportion to the severity of the offense.'" *Gore*, 517 U.S. at 576 (citation omitted). A reviewing court must consider whether: (i) "the harm caused was physical as opposed to economic"; (ii) "the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others"; (iii) "the target of the conduct had financial vulnerability"; (iv) "the conduct involved repeated actions or was an isolated incident"; and (v) "the harm was the result of intentional malice,

trickery, or deceit, or mere accident." *State Farm*, 538 U.S. at 419.  None of these factors

supports a finding of reprehensibility here.

The harm inflicted in this case was economic rather than physical.  *See Peer v. Lewis*, No.

08-13465, 2009 WL 323104, at *3 (11th Cir. Feb. 10, 2009) (finding lack of reprehensibility on

this factor where alleged actions did not cause physical harm, but rather "caused [plaintiff] to

lose business, and affected his campaign and future political pursuits").  PHH's  conduct did not

threaten the "health or safety of others."  Even where a defendant "continue[s] to report

unfavorable credit information regarding [Plaintiff] even after receiving notification from

[Plaintiff]," that defendant does not "not act with reckless disregard for the health and safety of

others."  *Bach v. First Union Nat'l Bank*, 486 F.3d 150, 155 (6th Cir. 2007) (*Bach II*) (internal

quotation omitted).  Plaintiff offered no evidence that he is financially vulnerable—*i.e.*, that he is

among "'the elderly, the poor, and other consumers who are least knowledgeable about their

rights and thus most vulnerable to trickery or deceit.'"  *State Farm*, 538 U.S. at 433 (Ginsburg, J.,

dissenting) (citation omitted).  Nor did he prove that PHH "target[ed]" him for this reason.  *Cf.*

*Kemp*, 393 F.3d at 1363; *see also Turner v. Firstar Bank, N.A.*, 845 N.E.2d 816, 828 (Ill. Ct. App.

2006).  PHH's conduct involved an "isolated incident."  As already explained, the only evidence

that even possibly could provide a springboard for punitive damages demonstrated that, at most,

PHH misapplied two of Plaintiff's mortgage payments, resulting in a one-time erroneous report

of delinquency to the credit bureaus, which PHH promptly retracted.  Although Plaintiff asserted,

without proof, that PHH adopted a "scheme" to recover late fees and extra mortgage payments,

that bare allegation does not support of finding of repeated tortious conduct that evinces

reprehensibility.  *See Bach v. First Union Nat'l Bank*, 149 Fed. App'x 354, 365 (6th Cir. 2005)

(*Bach I*) (despite allegation that bank's "business policies . . . indicated that FUNB treated

Bach's situation in the same way it treated all of its clients," there was no evidence that "FUNB had engaged in repeated conduct that would violate the [Fair Credit Reporting Act] in the past with respect to others" and thus "the fourth factor has not been met").

The record shows no harm to Plaintiff resulting from "intentional malice, trickery, or deceit." Although the jury found specific intent to harm for purpose of the statutory cap, that finding, as already discussed, is not supported by the evidence. In any event, the jury's finding does not automatically establish the reprehensibility of PHH's conduct. *See Johansen*, 170 F.3d at 1336 (even where "jury must have found 'specific intent to cause harm' to award punitive damages" above statutory cap, the lack of direct evidence of intent meant that defendant's conduct "did not constitute severe 'reprehensibility' under *BMW*"). Moreover, there can be no question that PHH undertook voluntary remedial measures to mitigate the harm to Plaintiff: not only did PHH correctly apply Plaintiff's payments for sixteen months, PHH re-applied the misallocated May 2009 payment, promptly retracted the erroneous delinquency report in November 2009, and reaffirmed the retraction the following month. Several courts, including the Eleventh Circuit, have recognized that reprehensibility is mitigated when the defendant has undertaken such preventative and remedial measures. *See, e.g., id.* at 1336 (defendant's "significant efforts" to prevent releases of acidic water from its property mitigated against finding of reprehensibility). Plainly, PHH's ministerial lapses pale in comparison to the misconduct in other cases where courts have found even lower punitive awards to be excessive. *See, e.g., Kemp*, 393 F.3d at 1363 (reducing $1,000,000 punitive award to $250,000 despite "large-scale corporate" effort "to exploit customers who were unsophisticated and economically vulnerable" by misleadingly presenting gambling debts as long-distance phone charges).

Indeed, the punitive award here exceeds—both in absolute terms and by its ratio to

compensatory damages—the $17.5 million punitive award approved by the Eleventh Circuit for "*exceedingly* reprehensible" conduct.  *Action Marine*, 481 F.3d at 1320 (emphasis added).  In *Action Marine*, the Court noted that the defendant's discharge of carbon black, an environmental pollutant and possible carcinogenic, had occurred over a period of five years as a result of a pattern of intentional misconduct.  *Id*. at 1319.  The defendant's action not only brought harm to the plaintiffs' properties, but also "resulted in the destruction of a once successful business and interfered with the use and enjoyment of municipal property."  *Id*. at 1319.  What is worse, the evidence showed that the defendant undertook elaborate efforts to evade detection, including having advance warnings of "surprise" government inspections from an employee within the agency, and denying entry to representatives of the Georgia Department of Natural Resources who came to investigate violations.  *Id*. at 1319-20.

The constitutionality of a punitive damages award "ultimately hinges on whether a defendant had adequate notice that its conduct might subject it to this punitive damage award."  *Myers v. Cent. Fla. Inv., Inc.*, 592 F.3d 1201, 1218 (11th Cir. 2010) (internal quotation omitted); *see also Action Marine*, 481 F.3d at 1318 ("[W]e maintain as our overarching aim eliminating the risk that a defendant is punished arbitrarily or without fair notice of the possible consequences of its actions.").  Given the significantly smaller punitive awards affirmed by the Eleventh Circuit for far more reprehensible actions, the basic right to fair notice is plainly absent here.  *See Myers*, 592 F.3d at 1218 ($500,000 for a pattern of intentional sexual harassment and touchings over five years); *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1282 (11th Cir. 2008) ($500,000 for intentional racial discrimination and retaliation); *Kemp*, 393 F.3d at 1363 ($250,000 for "large-scale corporate" fraud); *Bogle*, 332 F.3d at 1359 ($2 million per librarian for intentional racial discrimination).  No defendant, including PHH, could have notice of its

potential liability for a $20 million punitive verdict for the type of misconduct alleged in this case given the standard for "exceedingly reprehensible" conduct announced in *Action Marine*. In a far more factually analogous case, the Sixth Circuit remitted a punitive damages award to a constitutional maximum of $400,000. *Bach II*, 486 F.3d at 156. By any measure, the punitive award here violates due process.

#### (b)   Ratio To Compensatory Award

Plaintiff was awarded $1,350,575 in compensatory damages for emotional distress, credit monitoring services, and attorneys' fees. *See Action Marine*, 481 F.3d at 1321 (holding that attorneys' fees awarded under O.C.G.A. § 13-6-11 form part of the measure of baseline compensatory damages).[6] The ratio of the $20 million punitive award to these actual damages—a ratio of at least 15 to 1—far exceeds the permissible bounds of due process.

Yet it is impossible to determine the appropriate baseline for assessing the ratio of punitive to compensatory damages because damages for emotional distress were awarded not only on Plaintiff's negligence claim, but also on his RESPA claims, for which punitive damages are not available. *Sarsfield*, 667 F. Supp. 2d at 470. Identifying the actual amount of the negligence award, however, is a necessary prerequisite for awarding punitive damages, given that the Court must determine that the ratio between the tort and punitive awards is constitutionally permissible. *State Farm*, 538 U.S. at 425-26. Since it is impossible to know the actual amount of the alleged negligence damages, the Court cannot perform the required analysis. For this reason alone, Plaintiff cannot justify the award of any punitive damages, and the punitive award must be vacated.

---

[6] While acknowledging this holding, PHH notes that the Georgia Court of Appeals has held that an award of attorneys' fees under O.C.G.A. § 13-6-11 does not alone support an award of punitive damages. *See Sheppard v. Tribble Heating & Air Conditioning, Inc.*, 294 S.E.2d 572 (Ga. Ct. App. 1982) (ordering punitive damages struck while allowing fee award to stand).

Even if the amount of compensatory damages for Plaintiff's alleged negligence claim could be ascertained, the amount and nature of the compensatory award bars any further award of punitive damages as a matter of due process.  Where the compensatory award is "substantial," the U.S. Supreme Court has held that a ratio of punitive damages "perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee."  *State Farm*, 538 U.S. at 425.  More recently, in *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), the Court confirmed that, as a matter of federal common law, a 1:1 ratio "is appropriate in *all but the most exceptional of cases*." *Id.* at 514-15 (emphasis added); *see also id.* at 513 ("1:1 ratio, which is above the median award, is a fair upper limit").

The $1.35 million compensatory award in this case is "substantial" by any measure.  In fact, it is similar to, if not significantly larger than, many compensatory awards deemed "substantial" enough to trigger the 1:1 upper limit established in *State Farm*.  *See, e.g.*, *Jurinko v. Med. Protective Co.*, 305 Fed. App'x 13, 15, 30 (3d Cir. 2008) ($2 million compensatory award); *Clark v. Chrysler Corp.*, 436 F.3d 594, 607 (6th Cir. 2006) ($471,258.26 compensatory award); *Bach II*, 486 F.3d at 156 ($400,000 compensatory award); *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 796-99 (8th Cir. 2004) ($600,000 compensatory award).  Considering that some component of Plaintiff's compensatory award stems from RESPA liability, for which punitive damages may not be awarded, the constitutional ratio must be considerably less than 1:1.

Plaintiff's punitive award is even more suspect because it rests almost entirely on a compensatory award of damages for emotional distress.  In *State Farm*, the Supreme Court explained that awards of non-economic damages, such as for emotional distress, "already contain this punitive element."  *See* 538 U.S. at 426 (emotional distress damages "likely were based on a component which was duplicated in the punitive award.").  In this case, Plaintiff received an

emotional distress award of $1 million.  The award of attorneys' fees under O.C.G.A. § 13-6-11

also includes a punitive element, given that the award is based on alleged bad faith conduct.

Thus, a lower multiplier is "especially" appropriate "in light of the substantial compensatory

damages awarded (a portion of which contained a punitive element)."  *Id.* at 429; *see also*

*Bennett v. Am. Med. Response, Inc.*, 226 Fed. App'x 725, 728-29 (9th Cir. 2007); *McElgunn v.*

*Cuna Mut. Ins. Soc'y*, 700 F. Supp. 2d 1141, 1167 (D.S.D. 2010); *Grassilli v. Barr*, 142 Cal. App.

4th 1260, 1290 (2006); *Daka, Inc. v. McCrae*, 839 A.2d 682, 700 (D.C. 2003); *Roth v. Farner-*

*Bocken Co.*, 667 N.W. 2d 651, 671 (S.D. 2003).

### (c)      Comparison To Civil Penalties

Even if RESPA does not preempt Plaintiff's punitive award, *see supra*, the statute's

express $1,000 limitation on additional damages defines the constitutionally proper amount of

punitive damages.  "[A] reviewing court engaged in determining whether an award of punitive

damages is excessive should accord substantial deference to legislative judgments concerning

appropriate sanctions for the conduct at issue."  *Gore*, 517 U.S. at 583 (internal quotations

omitted).  More than "substantial" deference should be accorded to the statute here, because 12

U.S.C. § 2605(f)(1) is not really a civil penalty at all, but a congressionally approved limitation

on a borrower's private right of action.

Even if viewed as merely a civil penalty, several decisions issued since *State Farm* have

found that a large disparity between the punitive award and the applicable civil penalty

constitutes strong evidence of excessiveness.  *See, e.g.*, *Clark*, 436 F.3d at 608 ($3 million

punitive award versus $800,000); *Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 777 (9th Cir.

2005) ($10 million punitive award versus $300,000); *Lincoln v. Case*, 340 F.3d 283, 294 (5th Cir.

2003) ($100,000 versus $55,000); *Blust v. Lamar Adver. Co.*, 813 N.E.2d 902, 916 (Ohio. Ct.

App. 2004) ($2.245 million versus $96,000).

F.      **In All Events, PHH Is Entitled To A New Trial Or Remittitur On The Punitive Damages Award.**

Wholly apart from the Court's authority to enter judgment as a matter of law for a constitutionally proper award of punitive damages, the Court has considerable discretion in granting a new trial conditioned on a remittitur of the damages award.  *See, e.g.*, *Johansen*, 170 F.3d at 1328; *Rodriguez v. Farm Store Groceries, Inc.,* 518 F.3d 1259, 1266 (11th Cir. 2008); *Roboserve*, 940 F.2d at 1446–47.  As shown above, the punitive damages verdict grossly exceeds the amount that would be justified by the evidence.  Rather, it is the product of the improper and constitutionally impermissible arguments disparaging PHH's due process right to present every available defense in litigation, which inflamed the passions of the jury against PHH.  *See Warren*, 693 F.2d at 1380 (ordering conditional remittitur to $20,000 as maximum amount allowable for punitive damages where $54,100 punitive damage award exceeded the reasonable range).

## CONCLUSION

For these reasons, PHH respectfully requests that the Court grant it judgment as a matter of law on Plaintiff's claims or, in the alternative, a new trial conditioned on remittitur of the compensatory and punitive damages awards.

Dated: May 2, 2011

/s/ G. Lee Garrett, Jr.

G. Lee Garrett, Jr.                                    W. Reese Willis III
Ga. Bar No. 286519                                Ga. Bar No. 767067
David J. Bailey                                         Lisa R. Rose
Ga. Bar. No. 031800                              Ga. Bar No. 614204
Samantha Mandell                                  Emilie O. Denmark
Ga. Bar No. 141689                                Ga. Bar No. 185110
Jason T. Burnette                                     MCCALLA RAYMER, LLC
Ga. Bar No. 242526                                Six Concourse Parkway
JONES DAY                                             Suite 2800
1420 Peachtree Street, N.E., Suite 800    Atlanta, Georgia 30328
Atlanta, GA  30309-3053

*Attorneys for Defendant PHH Mortgage Corporation*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was electronically filed with the

Clerk of Court using the CM/ECF system, which automatically serves e-mail notification of such

filing to the attorneys of record, each of whom is a registered participant in the Court's electronic

notice and filing system and each of whom may access said filing via Court's CM/ECF system.

This 2nd day of May, 2011.

<div style="margin-left: 50%;">

/s/ Samantha R. Mandell.<u>     </u>
Attorney for Defendant PHH
Mortgage Corporation

JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA  30309-3053
Telephone:     (404) 521-3939
Facsimile:      (404) 581-8330

</div>

ATI-2468179